# *Ex parte* Crews.

*Application for Certiorari and Habeas Corpus.*

1. *Statutory provisions as to hiring of county convicts.*—Under the statutory provisions regulating the hiring of county convicts (Sess. Acts 1882–3, p. 135, § 5; Sess. Acts 1884–5, pp. 187–96, § 35), two distinct and separate contracts, or systems of letting to hire—one for persons convicted of offenses involving moral turpitude, and the other for persons convicted of other offenses—are necessary, when the court has decided on letting to hire as the mode of inflicting the punishment of hard labor for the county; and these must be shown by the orders of the court entered of record, though they may be carried into effect by any mem-

| 78 | 457 |
| --- | --- |
| 98 | 68 |
| 78 | 457 |
| 99 | 302 |
| 78 | 457 |
| 103 | 307 |
| 78 | 457 |
| 123 | 93 |
| 78 | 457 |
| 134 | 208 |

ber of the court, or any other person duly appointed and authorized by the court to act for it.

2. *Discharge of convict sentenced to hard labor, when sentence is not carried into effect.*—When a person, being convicted of a misdemeanor, is sentenced to hard labor for the county on non-payment of the fine and costs, and ordered to be " confined in the county jail until within five days next after the adjournment of the court, when he will be delivered to the superintendent of hard labor by the sheriff;" he is entitled to be discharged on *habeas corpus*, if the order is not carried into effect within a reasonable time after the adjournment of the court.

3. *Same; what is reasonable time.*—In such case, the judgment and sentence being rendered on the 3d December, and the term of the court expiring by limitation on the 5th, a petition for discharge from custody, filed on the 23d, is not premature, although the minutes have not been signed by the presiding judge.

This was an application by petition, in the name of Aleck Crews, for the writs of *certiorari* and *habeas corpus*, to procure his discharge from the custody of M. L. Passmore, deputy-sheriff and jailer of Barbour county, who held him under a judgment rendered by the Circuit Court of said county on the 3d December, 1885. The application for a discharge on *habeas corpus* was first addressed to Hon. JOHN A. FOSTER, chancellor, who, on the hearing, on December 26th, 1885, refused to discharge the petitioner; and a copy of the proceedings then had, with the chancellor's judgment refusing a discharge, was made an exhibit to the petition filed in this court. A copy of the judgment under which the petitioner was held in custody, was also made an exhibit to the petition, the material parts of it being stated in the opinion of the court. It was proved also, on the hearing before the chancellor, that the petitioner, with other county convicts, was offered on the 9th December to Comer & McCurdy, who had a contract with the County Commissioners " for all the convicts sentenced to hard labor for said county," from the 1st February, 1884, to the 1st February, 1886; but they refused to receive him, because, being convicted of an offense not involving moral turpitude, they could not put him to work " at Pratt Mines and vicinity, at the business of mining," as their contract authorized them to employ their convicts. This contract, which was offered in evidence on the hearing, was dated January 15th, 1884, and was signed by said Comer & McCurdy, and by A. H. Alston, the probate judge of the county, "appointed by the court of County Commissioners to hire out the persons sentenced for hard labor for said county;" and it was made subject on its face to all the provisions of the act approved February 22d, 1883.—Sess. Acts 1882-3, p. 135.

The contract with Comer & McCurdy was made, as the probate judge testified, under an order made by the court of County Commissioners, and regularly entered on their min-

[*Ex parte* Crews.]

utes, on the 27th December, 1883, as follows : "It is ordered by the court, that the convicts or chain-gang of said county be let out to the highest bidder at public outcry, in front of the court-house door in Clayton, after having first advertised," &c. "It is further ordered, that said convicts be hired for the space of two years, beginning February 1st, 1884, and that they be hired under contract and bond of like terms and agreement of the contract and bond now in force between Barbour county and J. W. Comer, which expires on Jan. 1st, 1884; said contract to be approved by the judge of probate, who is hereby empowered to act in behalf of the county. It is further ordered, that the judge of probate be authorized to hire the convicts, for the space of one month from January 1st, 1884, to the present contractors, upon the same terms that the convicts are now hired." In June, 1885, Comer & McCurdy having refused to receive under their contracts two county convicts who had been convicted of offenses not involving moral turpitude, the probate judge made a private contract for hiring them out, and reported his action to the court of County Commissioners, at the ensuing July term ; and said court thereupon entered on their minutes an order approving and ratifying his action, and then adding : "It is further ordered, that in all similar cases the judge of probate be, and he is hereby, empowered to make such arrangements as to him may seem best." And at the November term, 1885, said court made and entered another order, in these words : "On motion, Judge Alston was authorized to adopt measures at his discretion, and take such steps as he might deem proper, as to the letting out of the contract for county convicts, when the terms of the present contract shall have expired." These orders, as Judge Alston testified, showed the entire action of the County Commissioners in the matter of establishing a system for the hiring of the county convicts.

J. M. WHITE, and J. N. WILLIAMS, for the petitioners.

THOS. N. McCLELLAN, Attorney-General, for the State.

STONE, C. J.—By act approved February 22d, 1883, § 5, Sess. Acts, 135, it was declared to be "unlawful for the hirers of convicts to work together, or confine in the same room or apartment, any convict who has been sentenced for the commission of a misdemeanor with a convict sentenced for the commission of a felony; . . . All persons convicted of misdemeanors shall be employed or hired in the county where convicted, unless, in the opinion of the persons or body

having charge of the hiring of such persons, the interest of the county requires that they be hired outside of the county."

The act approved February 17th, 1885—Sess. Acts, 187–96 —contains further provisions on the subject. See sections 19; 20, and 35. By section 35 it is provided, "That it shall be unlawful to work upon railroads, or in mines, convicts who have been convicted of an offense not involving moral turpitude."

It is not important that we should determine the meaning and extent of the order of the court of County Commissioners of Barbour county, made and entered December 27th, 1883. We incline to the opinion, that its true interpretation makes it comprehensive enough to embrace, not only convicts then under sentence of conviction, but also such as should be adjudged guilty afterwards,, while that order stood in force. It was, as we think, a substantial compliance with the statute as found in the Code of 1876, beginning with section 4465. The act of February 22d, 1883, required that persons convicted of misdemeanors should be worked apart from convicted felons, and further required that misdemeanants should be employed or hired in the county in which they were convicted, unless, in the opinion of the authorities letting them to hire, the good of the county required they should be hired outside of the county. This statute, it would seem, required the establishment of two systems for letting to hire—one for the hiring of convicted felons; and the other, of persons adjudged guilty of misdemeanors. We need not decide this. The later statute of February 17th, 1885, relieves this question of all doubt and uncertainty, and requires that, if the court of County Commissioners determine on letting to hire, as the mode of inflicting the punishment of hard labor for the county, there must be independent lettings of the two classes—convicts of offenses involving moral turpitude, and convicts whose offenses do not involve moral turpitude. The two classes can not, with any propriety, be let to one hirer, by one and the same contract; for they can not be worked together, while one class may be put to labor which is much more onerous and hazardous than the other can be subjected to.

It is manifest that, while the order of December, 1883, was sufficient for persons convicted of crimes involving moral turpitude, it was and is wholly unsuited to that class of minor offenders, in whose offenses that bad element is wanting. The petitioner in this case was convicted of an assault and battery. The statute forbids that he shall be worked on railroads, or in mines, and also forbids that he shall be hired out of the county, unless, in the opinion of the court of County Commissioners, the interest of the county requires it. No provision is found

in said order which meets such a case as this, as is shown in Comer & McCurdy's rightful refusal to accept a misdemeanant under their contract.

The only action of the court of County Commissioners affecting the class of offenders guiltless of moral turpitude, other than what is stated above, is found in two orders of that court. The first was passed at the July term, 1885, and, after referring to the action of the judge of probate in privately hiring out two persons previously convicted of misdemeanors, and ratifying his action in the premises, proceeded as follows: "And it is further ordered that, in all similar cases, the judge of probate be, and he is hereby, empowered to make such arrangements as to him may seem best." The other was an order adopted at the November term, 1885, in the following language: "On motion, Judge Alston [probate judge] was authorized to adopted measures at his discretion, and take such steps as he might deem proper, as to the letting out of the contract for county convicts, when the terms of the present contract shall have expired." The contract referred to, as being about to expire, was doubtless the contract with Comer & McCurdy, by which the court of County Commissioners of Barbour county had previously let the convicts of the county to "work at Pratt Mines and vicinity, at the business of mining." Neither of these orders, nor both combined, can be construed into a compliance with the statute. The court itself must "determine in what manner, and on what particular works, the labor shall be performed."—Code of 1876, § 4465. The "particular works" mentioned have reference to labor to be performed for the county proper, such as "labor on public roads," etc. When the intention is to let to hire, very general terms will be sufficient. Enough that it discriminate between the two classes, one of which may be put to labor on railroads, or in mines, and anywhere in the State; the other, not to be carried out of the county, unless an order is passed by the court of County Commissioners, affirming that, in the opinion of the court, the interest of the county requires that they be hired outside of the county. Perhaps, the briefest and simplest method of disposing of the question will be found to be, to make one order for hiring persons convicted of offenses involving moral turpitude, and another for offenders of the class involving no moral turpitude. Anything equivalent to this would be sufficient. And these orders must be entered on the records of the court.—Code of 1876, § 4468. Being made by the court, and entered of record, the court of County Commissioners may carry them out, "by themselves, or by some member of their body, or other person to be appointed by them."—Code of 1876, § 4469. We hold

that, when the petition for *habeas corpus* was filed in this case, no system of hard labor for the county had been established by the court of County Commissioners of Barbour county, adapted to the case we have in hand.

The petitioner, Alexander Crews, was, on December 3d, 1885, tried and convicted of an assault and battery in the Circuit Court of Barbour county, then in session at Clayton. The fine assessed against him was three hundred dollars. The judgment-entry states that " the defendant, Aleck Crews, failing to pay or secure his fine, it is considered by the court that he be imprisoned to hard labor for the county for ninety days for the fine, and until the costs are paid, at 35 cents per day, unless sooner paid ; and that he be confined in the common jail of the county until within five days next after the adjournment of this court, when he will be delivered to the superintendent of hard labor for the county by the sheriff, who is charged with the execution of this sentence."

It was shown " that the Circuit Court of Barbour county had not been in actual session in Clayton since Saturday, December 5th ; that there had been no formal adjournment of the court, nor had the minutes been signed ; that the court had transacted no business at Clayton since said date of December 5th, and that there was no business of the court remaining undone, except the signing of the minutes by the judge ; that the Circuit Court convened in session at Eufaula on Monday, December 7th, and remained in active session there until December 24th, when there was an informal adjournment. The court at Eufaula has not yet, December 26th, formally adjourned." The petition and order for original *habeas corpus* in this case bear date December 23d, 1885.

In answer to the relief prayed in this case, it is urged that, when the petition for *habeas corpus* was filed—December 23d, 1885—the term of the court at Clayton had not adjourned, and therefore the petition was prematurely filed. The latest statute, declaring when the Circuit Courts of Barbour county shall be held, was approved March 1st, 1881.—Sess. Acts, 57. There is an error in the printed copy. Corrected by the statute in manuscript, it provides that Circuit Courts shall be held " for the county of Barbour, at Clayton, on the eleventh Mondays after the first Mondays in March and September, and may continue two weeks ; and at Eufaula on the thirteenth Mondays after the first Mondays in March and September, and may continue two weeks, or until the business is disposed of." The Fall term, 1885, of the court at Clayton commenced November 23d, and ended December 5th ; that being the time prescribed by law. That term could not be prolonged beyond December 5th, for that was the limit the law had prescribed.

[Chapman v. The State.]

The term at Eufaula, being allowed to continue until the business was disposed of, remained in session until December 24th, one day after the petition for *habeas corpus* was presented and allowed in this case. A question may arise, whether the court, held partly at Clayton, and partly at Eufaula, is to be treated as two separate terms, or as one term. This question has not been argued, and we do not propose now to decide it. We do not doubt that, when the presiding judge ordered that the defendant "be confined in the common jail of the county until within five days next after the adjournment of this court," he had reference to the term then being held at Clayton. That term, as we have seen, expired, both in law and in fact, on December 5th; and the extra five days, during which the petitioner was allowed to be kept in prison, expired with December 10th. These additional five days were only a reasonable time within which to execute the order of the court, and, no doubt, were so intended.—*Kirby v. The State*, 62 Ala. 51. After the expiration of these five days, the petitioner remained in prison twelve days, before he applied for *habeas corpus*. During these twelve days, he was imprisoned by no order of the court; for the sentence was, that he should do hard labor, not suffer imprisonment. And the court of County Commissioners had established no system of hard labor adapted to the offense of which he had been convicted. It follows, that the petitioner is improperly imprisoned, and is entitled to his discharge, as the facts now appear before us —*Ex parte McKivett*, 55 Ala. 236; *Kirby v. The State*, 62 Ala. 51; *State v. Metcalf*, 75 Ala. 42; *Smith v. The State*, 76 Ala. 69.

The writs of *habeas corpus* and *certiorari* will be awarded, unless the petitioner is content to renew his application before a court or judge of primary jurisdiction. The costs of this proceeding are adjudged against M. L. Passmore, who can apply for relief to the court of County Commissioners, if he thinks himself aggrieved.