# *Ex parte* White.

### Application for Habeas Corpus.

1. *Hiring convicts; record of order* —The failure to transcribe upon the final records of the court as required by § 4468 of the Code of 1876, an order of the Commissioners' Court for the hiring of convicts sentenced to hard labor for the county, a written memorandum of which is made at the time by the Probate Judge, does not impair the validity of such order.

2. *Same ; requisites of order.*—Such an order involves a finding and decision by the court, that the interests of the county require that such convicts be hired out of the county, and the record or order need not recite this fact.

3. *Same.*—The order in this case does not establish a system of hard labor for the county, and hence, it is not necessary that it should determine in what manner and on what particular works the convicts shall be employed. (Code of 1876, § 4465).

4. *Same ; and contract of hiring.*—The order of hiring in this case, and contract made pursuant thereto, are sufficiently certain and definite. It is no valid objection, that there is but one order and one contract embracing the two classes of convicts, when the terms as to each are specified and distinguished in the one order and contract. The statutory prohibition against employing convicts upon railroads was an implied term of the contract, and it was not necessary to express it.

FROM the Probate Court of Hale.

This was an application for the writ of *habeas corpus*, originally addressed to, and heard by, the Hon. JAMES M. HOBSON, Judge of the Probate Court of Hale county.

The bill of exceptions recites that on the hearing of the application by said probate judge, the evidence showed, " that there was no order or proceedings on the records of the Court of County Commissioners of said county of Hale, or in the probate office of said county, of the establishment by said Court of County Commissioners of any system of hard labor for said county for the year 1887, and no mention

[*Ex parte* White.]

or reference thereto or to any proceedings pertaining thereto ; but the said judge of probate testified, that at the December term, 1886, of said commissioners' court, the matter of the establishment of a system of hard labor for said county for the year 1887, was before said court, and the action of said court thereon was written down by said probate judge, who presided therein, on a loose slip of paper as a memorandum of their deliberations, and that said memorandum was as follows :

'Adjourned November term, held December 6, 1886. Ordered by the court that the proposition of the Coalburg Coal and Coke Company for the hire of the Hale county convicts, sentenced to hard labor for the county during the year beginning December 1, 1886, at the rate of $8.00 per month for those convicted of crimes not involving moral turpitude, and $11.00 per month for those convicted of crimes involving moral turpitude, be accepted ; and the judge of probate is authorized and directed to have contract drawn up and good security given to secure the payment of said hire. And the court hereby establishes as the hard labor system for said county the following, that is to say, that convicts sentenced to hard labor for the county for crimes involving moral turpitude shall be worked *in* the mines at the Coalburg Coal and Coke Company's works near Birmingham, and that those sentenced to hard labor for county for crimes not involving moral turpitude, shall be worked *at* said place, but not *in* the mines, but at the ordinary labor required of those working above the ground.' "

The judge of probate further testified, that said memorandum was never recorded or signed by him or any member of said commissioners court ; but that at the time it was made, the said court directed him to record said memorandum, but it had not been recorded.  It was further shown, that in pursuance of said memorandum and without any other order or authority, the probate judge accepted a contract with the Coalburg Coal and Coke Company for the hire of all the convicts of Hale county, sentenced to hard labor for said county, for the year beginning December 1, 1886 ; and said contract embraced both convicts for crimes involving moral turpitude, and those for crimes not involving moral turpitude, and the clauses of said contract relating to these two classes of convicts, are as follows :   " The Coalburg Coal and Coke Company agrees to pay for the hire of each and every person convicted of crimes involving moral turpitude and who are physically able to perform hard labor *in* the coal mines at Coalburg, Alabama, at the rate of eleven dollars ($11.00) per month.   The Coalburg Coal and Coke

Company, also, agrees to pay for the hire of all persons, convicted of crimes not involving moral turpitude and who are physically able to perform hard labor *about* the mines at Coalburg, Alabama, at the rate of eight dollars ($8.00) per month."

It was further shown, that the petitioner, Allison White, was convicted by the County Court of said county, January 26, 1887, of the offense of "playing cards in a public place," an offense not involving moral turpitude, and sentenced to hard labor for said county; and, under said contract above referred to, was turned over to the said Coalburg Coal and Coke Company, and held and put to hard labor by said company.

This being substantially all the evidence, the judge of probate refused to discharge the petitioner and remanded him to the custody of the Coalburg Coal and Coke Company. To this action of the court, the petitioner excepted.

The bill of exceptions further recites that, "The petitioner, thereupon, claimed the right of appeal to the Supreme Court of Alabama, and to be remanded to the jail of said county, or to give bond, pending said appeal; but the judge refused to recognize the petitioner's right of appeal, and refused to remand him to the jail of said county, or to allow him to give bond, pending said appeal; and to each of these rulings, separately and severally, the petitioner excepted."

COLEMAN & COLEMAN, for petitioner.—1. The contract by which the convicts were hired does not "express the kind of labor and the place at which it is to be performed," and hence establishes no system of hard labor for the county. Acts of 1884-5, p. 192, section 20; Code, sections 4465, 4468; *State v. Metcalfe*, 75 Ala. 42; *Ex parte Crews*, 78 Ala. 457. 2. There should be established in each county two systems, one for the hiring of convicted felons, and the other of persons convicted of misdemeanors; and a separate contract for each class is required.—Acts, 1882-3, pp. 134, 141; Acts, 1884-5, p. 192, section 19; *Ex parte Crews, supra*. 3. The proceedings of the Commissioners' Court should have been recorded, and should affirmatively show every jurisdictional fact, the court being of limited jurisdiction.—Code, sections 739, 747; *State v. Ely*, 43 Ala. 568; *Molett v. Keenan*, 22 *Ib.* 484; *Commissioners' Court of Talladega v. Thompson*, 15 *Ib.* 134, and authorities therein cited. 4. The record should have shown affirmatively, that, in the opinion of the court, it was to the interest of the county that the convicts should be worked out of the county.—Code, section 4468; *Ex parte Crews, supra*.

[*Ex parte* White.]

T. N. McCLELLAN, Attorney-General, for the State.

SOMERVILLE, J.—The petitioner was convicted, on January 26th, 1887, of playing at cards in a public place, which is an offense not involving moral turpitude, and on the same day was sentenced to hard labor for the county.

The order of the Commissioners' Court of Hale county, authorizing him and others to be hired to persons out of the county, and under the authority of which the petitioner is held in custody, bears date December 6th, 1886, having been made and reduced to writing on that day.

1. It is first urged that this order was void and of no effect because it was never entered upon the final records of the court as required to be done by section 4468 of the present Code. We do not think this position is maintainable. The statute contemplates, it is true, a formal and permanent record entry of the minutes or proceedings of the Court of County Commissioners in reference to this subject-matter, and the duty of the judge of probate to make such a final record is clear. But it no where appears that his neglect to transcribe such minutes, already reduced to writing and in due form, was intended by the law-making power to entirely vitiate the legal validity of the order. This writing itself is a *quasi* record, being a written memorial made by the public officers authorized by law to perform the function exercised, and intended to serve as evidence of what was to be done more formally, and to be permanently recorded. This involves every essential essence of a record, the validity of which is not dependent on its final character. Not only was it a valid memorial of such proceeding, but was competent evidence of the facts properly recited in it, until the final record had been completed.

2. It is further insisted that the order fails to show that, in the opinion of the Court of County Commissioners, the interest of the county required that convicts of the class to which the applicant belongs, should be hired out of the county. It is true that section 5 of the act of February 22, 1883, regulating the hiring of convicts, provides that they shall be employed or hired in the county where convicted, unless the Commissioners' Court, or other body having charge of such hiring, entertain such opinion. In *Ex parte Small*, decided at the present term, we held that the act of the court in making an order of this kind was equivalent to a direct finding by them that the interest of the county required that such convicts be hired out of the county. The record or order need not specially recite this fact.

3. It was unnecessary, moreover, for the record or the order to determine in what specific manner the convicts should be employed, or to regulate the details of such employment. Section 4465 of the Code (1876), which provides that the Court of County Commissioners shall determine " in what manner and on what particular works " hard labor for the county shall be performed, has no application to this case. It applies only where there has been established a system of hard labor for a county, and convicts are employed " in laboring on the public works " of such county. The order here made, though it purports to establish such a system, does not do so in fact, and legal effect. It merely authorizes a *hiring* of convicts to a particular person or corporation, out of the county. This is not a system of hard labor for the county, which is placed by the statute under the superintendence and control of the court of county commissioners.—Code, 1876, §§ 4465, 4468; *Ex parte Crews*, 78 Ala. 457.

4. The order of hiring, and the contract made pursuant to it, are sufficiently certain and definite in their terms. It provides that those convicted of crimes not involving moral turpitude, to which class the petitioner belongs, shall not be worked *in* the mines, but may be worked by the hirer *at* such mines, near Birmingham, at "the ordinary labor required of those working above ground." It was not necessary to specify that those hired should not be employed on railroads. The statute prohibited this, and the prohibition impliedly entered into the contract as fully as if expressly inserted in words. Nor were two separate and distinct orders of hiring necessary—one of those convicted of crimes involving moral turpitude, and the other for those convicted of offenses not involving moral turpitude. There might well be one order, involving the terms of hiring for two separate and distinct classes. The order conforms fully to this requirement. There is no objection to a unity of contract, if the terms of hiring each class of convicts are independent and distinct, and the contract otherwise conforms to the statutory regulations governing the subject. The case of *Ex parte Crews*, 78 Ala. 457, was not intended to go further than this.

The application for *habeas corpus* must be denied.