THE STATE *vs.* LOWRY.

[MOTION TO AFFIRM JUDGMENT OF CONVICTION ON CERTIFICATE, OR TO REQUIRE CLERK TO FORWARD TRANSCRIPT.]

1. *Practice prescribed on suspension of judgment when questions of law are reserved.*— When questions of law are reserved for the determination of the appellate

the statute, though used only as a bed-room by the keeper of the bridge, an unmarried man.

2. *When such house is public.*—If such house is merely the private residence of the keeper of the bridge, it is not within the prohibition of the statute, although occasional settlements for toll are made therein; but, if the front room is appropriated to the transaction of the business of the bridge, such as keeping the books, settling accounts, &c., and is occupied by the keeper subject to such appropriation, and persons having business connected with the bridge are invited or licensed to go there by the very nature of the business to which it is appropriated, it then becomes a "public house" within the meaning of the statute.

3. *General charge on effect of evidence erroneous.*—When there is any conflict in the evidence, on any material question of fact, a charge which instructs the jury, "that if they believe the evidence, they must find the defendant guilty," is erroneous.

FROM the Circuit Court of Bibb. .

Tried before the Hon. ROBERT DOUGHERTY.

THE indictment in this case was in the general form allowed by the Code, and the facts disclosed by the bill of exceptions are as follows: "That the defendant and one Carson, within twelve months before the finding of the indictment, played a game with cards in the back room of a house on the road near the public bridge over the Cahaba river in said county; that there were two rooms in said house, one fronting the public road which passed over said bridge, and the other in the back part of the house; that said rooms were separated by a partition, in which there was a door connecting them; that said playing took place in the back room, which was the bed-room in which defendant slept and staid, and which was as private as any other room ; that said Carson, at the time of said playing, was at said house on a friendly visit to defendant, and went there by defendant's invitation; that the only door to said room (the door in said partition) was locked during the said playing, and the curtains to the windows were drawn, so that no person could see into said room while said playing was going on. There was no evidence to show that any person, except defendant and said Carson, was in or about said house, or in or near the premises, or passing said road, while said playing was going on. It was in evidence that said house was built about three years before the trial of this cause, by one Gillespie, who then owned said

bridge; that he occupied it while he kept said bridge, which was proved to be a public toll-bridge; that said house had since been occupied by persons who kept said bridge, of which defendant was the keeper when said playing took place; and that the custom of the keepers of said bridge was, to receive the toll due for crossing outside and in front of said house, and not in said room. But it was proved by one Robert Hill, that he once went into the front room of said house, before defendant kept such bridge, and paid toll there; that defendant was not present at that time; that said Hill went into said front room as he would have gone into the private dwelling-house of any other friend or neighbor; that he also saw other persons occasionally go into said front room, but did not know whether they went in by invitation, as friends, or on business; that he never saw any other person transact business in said front room, but had seen several persons pay toll in front of said house on the road."

The State then introduced as a witness one Felix Shropshear, who testified, "that he had been in the habit of frequently passing over said bridge; that he had paid toll at said bridge, but did not recollect that he had ever paid toll in the front room of said house more than once, and then defendant was not present, nor the keeper of said bridge; that he then saw books in said room, in one of which an account was entered against him for toll, which he then paid; that he had seen no other person pay toll in said front room, but had frequently seen them pay toll outside of said house, and in front thereof."

William Schooler testified, "that he had once paid an account for toll, in said front room; that he saw the keeper of said bridge in Centreville, and told him that he would soon be over to pay his toll; that he accordingly went over, and went into said front room, and settled his toll from the books in said room; that he saw in said books accounts against several other persons for toll for crossing said bridge; that defendant was not then present, nor was he then the keeper of said bridge. Said Shropshear and Schooler both testified, further, that they went into said front room as they would have gone into any friendly neighbor's dwelling-house, and as they would have gone into a public store." Benjamin Glass testified, "that he was keeper of said bridge after defendant, and

received from him, in the front room of said house, the books in which were kept accounts for toll for crossing said bridge." "There was no evidence that said back room, in which said playing took place, was ever used for any other purpose than as a private bed-room, or that it was ever used by any person who did business in said front room, except as and for a private bed-room, or that there was any connection whatever between said rooms, except as shown. It was in evidence, also, that said front room was used as a sitting-room, in which the occupant of said house entertained the friends who visited him; that said house had been built about three years, was some twenty-five or thirty yards from the end of said toll-bridge, and had always been used and occupied by the person who kept said bridge and received the toll thereof; and that the defendant, at the time said playing took place, kept said bridge, received the tolls, and occupied the house as aforesaid, but had no family, and boarded in Centreville."

"This was all the evidence; and thereupon the court charged the jury, that if they believed the evidence, they must find the defendant guilty; to which charge the defendant excepted."

I. W. GARROTT, for the appellant.

M. A. BALDWIN, Attorney-General, contra.

RICE, C. J.—If the front room of the house, in which the playing at cards occurred for which the defendant is indicted, is within the prohibition of section 3243 of the Code, it is clear, upon the evidence and the former decisions of this court, that the back room is also within the prohibition.—Johnson v. The State, 19 Ala. R. 527 ; Brown v. The State, 27 ib. 47; Huffman v. The State, at the present term.

The main question, therefore, in this case, is, whether the front room is within the prohibition. If the house was merely the private residence of the keeper of the public toll-bridge, it is not within the prohibition, although occasional settlements for toll were made therein. But if the front room was the apartment, or office, appropriated to the transaction of the business of the bridge, such as keeping the books in relation to tolls, settling accounts for toll, &c., and to which by the very nature of the business to which it was appropri-

ated, persons desiring to pay what they owed for toll, or to make contracts about toll, were invited or licensed to go, and was occupied and held by the keeper subject to such appropriation, business, or use, then it is a "public house" within the meaning of the aforesaid section of the Code.

As the question whether the house is a public house or not depends on the nature of the business or use to which it was appropriated, and as the evidence on that point is not free from conflict, it was erroneous in the court below to charge the jury, that if they believed the evidence, they must find the defendant guilty. Such a charge can never properly be given, when there is any conflict in the evidence on any material question of fact in the cause.—Browning v. Grady, 10 Ala. R. 999 ; Stewart v. Hood, *ib.* 600 ; Boyd v. McIvor, 11 *ib.* 822.

For the error of the charge in this respect, the judgment is reversed, and the cause remanded.