# Southern Railway Company *v.* Moore.

*Action against Railroad Company by Employe to recover Damages for Personal Injuries.*

1. *Employer's liability act; liable for wanton, willful or intentional misconduct of an employee.*—An employer is liable in damages under the Employer's Liability Act (Code, § 1749), for

the wanton, willful or intentional misconduct of the employé inflicting personal injury upon another employé.

2. *Same; ropes used in lowering timber on trestle no part of the ways, works, machinery or plant of a railroad.*—A rope used for lowering timber in the construction of a trestle along a railroad track, by means of which heavy timbers are put into their places, is, in no sense, a part of the ways, works, machinery or plant of a railroad company; and in an action to recover damages for personal injuries, a count of the complaint which bases the plaintiff's right of recovery upon a defect in such rope, as having caused the injury complained of, does not state a cause of action under the subdivision 1 of the Employer's Liability Act, (Code, § 1749), and is demurrable.

APPEAL from the City Court of Birmingham.

Tried before the Hon. W. W. WILKERSON.

The appellee, Isaac F. Moore, brought the present action against the Southern Railway Company, claiming $20,000 damages and personal injuries, sustained by the plaintiff while in the employment of the defendant. The facts of the case pertaining to the accident, and as shown by the evidence, are as follows: Plaintiff was a bridge carpenter in the employment of defendant corporation and was engaged at the time of the injury complained of in building a trestle on the line of the defendant's road near Cordova, Alabama. One Riley was the superintendent or foreman in the employment of defendant and in charge of the men employed in the building of said trestle and of the tools, appliances and machinery used therein. The trestle upon which they were at work was twenty or more feet from the level of the ground, and very heavy timbers were used in the construction of the same, each one weighing from 1,200 to 1,500 pounds. In handling such timbers it was necessary and customary to use ropes, one on each end of such timber, and let them down from above on the caps below. At the time of the injury complained of one of the timbers while being let down as usual, became displaced or disarranged, and was not going squarely on the caps, and the superintendent, Riley, ordered plaintiff to take a steel bar and place upon the top of said cap, so that the timber

could be slid into position. In obedience to said order plaintiff placed said bar on the top of the cap, and then, without any warning to plaintiff, the superintendent, Riley, ordered the men lowering the timber to let it drop. The timber was dropped, striking the bar and throwing plaintiff off the trestle, inflicting the injuries complained of.

The complaint, as amended, contained nine counts. Each of the counts alleged the facts as above stated. In the first count the allegations of the complaint were as follows: "And plaintiff avers that he suffered said wounds and injuries by reason of the negligence of a person, to-wit, John Riley, in the service or employment of the defendant, who had superintendence entrusted to him, whilst in the exercise of such superintendence, in that said Riley negligently and carelessly ordered and permitted the said heavy piece of timber to be turned loose and dropped on and against said rod of iron whilst plaintiff was holding same."

The averments of negligence as contained in the second count were identical with those of the first count with the exception that it averred that the injury and damage complained of were "caused by reason of the willful and wanton negligence of John Riley, the foreman as aforesaid," who, seeing plaintiff's danger, as alleged, "negligently, wantonly and willfully ordered said piece of timber turned loose and caused same to fall against and upon said rod with great force and violence, to the injury of plaintiff as aforesaid."

In the third count the averments of negligence were as follows: "And plaintiff avers that the wounds and injuries complained of were caused by reason of the negligence of John Riley, the foreman, who was at the time in the service and employment of the defendant, to whose orders and directions plaintiff at the time of the injuries was bound to conform, and did conform, in that said Riley, knowing and seeing the danger of plaintiff, negligently and carelessly ordered him to hold said piece or iron on said cap and negligently and carelessly caused or permitted said piece of timber to fall with great force against said rod

while plaintiff was holding same, all to the hurt and damage of plaintiff as aforesaid. And plaintiff avers that the injuries complained resulted from his having conformed to said order."

In the fourth count the averments of negligence were the same as those contained in the third, except that after alleging that the injury was caused by the willful and wanton negligence of John Riley, it was then averred that "while plaintiff was holding the rod on the cap, the said John Riley negligently, carelessly, willfully and wantonly caused said piece of timber to fall or be dropped with great force on and against said rod of iron, all to the damage of plaintiff as aforesaid. And plaintiff avers that said injuries complained of resulted from his having conformed to said order."

The fifth, sixth and seventh counts of the complaint were stricken. The averments of negligence in the eighth and ninth counts of the complaint were as follows: "That one of the ropes used by the defendant for lowering the timbers as aforesaid was old and had become worn, and had knots or hangers to it, so that in lowering the timbers as aforesaid, the same would get caught and hang. That on said day and date a heavy timber, which was being lowered by means of said rope became hung on account of the defects therein, and while plaintiff was holding a bar of iron on the cap, to which said piece of timber was being lowered, as his duty required, said timber on account of said defective rope, suddenly fell with great force on or against said bar, which plaintiff was holding, thereby throwing plaintiff down and off said trestle, with great violence, all to plaintiff's hurt and damage as alleged in the first count of this complaint. And plaintiff alleges that the injuries so received were caused by reason of a defect in the condition of the ways, works, machinery or plant connected with or used in the business of said defendant, in that the rope used to lower the timbers in the construction of said trestle were old, worn and defective so as to cause the timbers to catch and fall with a jerk, and plaintiff alleges that such defect arose from or had not

been discovered or remedied owing to the negligence of the defendant, or of some person in the service of the defendant, and instructed by it with the duty of seeing that the ways, works, machinery or plant were in proper condition."

"While plaintiff was holding said rod on said cap the said John Riley negligently instructed and ordered a person in the employment of defendant to take a bar and unloose the rope, and in obedience to said order and instructions, said person did unloose said rope and thereby cause said timber to fall on and against him as above alleged, all to his damage aforesaid."

To the first count of the complaint the defendant demurred upon the following grounds: 1st. It does not allege that Riley, at the time he gave the order, knew that plaintiff was holding the iron rod. 2d. That said count fails to show that the timber could have been lowered on the cap in any other manner, or that it was done in a manner that was unusual and unnecessary.

To the third count the defendant demurred upon the ground that it is shown by the averments therein that the obedience to the order of Riley for plaintiff to hold the iron bar mentioned did not cause the injury complained of, but another intervening cause brought about the injury.

To the second and fourth counts the defendant demurred upon the ground that they purported to be causes of action under section 1749 of the Code, whereas there could be no cause of action arising under such statute in favor of an employé against his employer for his willful or wanton injury.

To the eighth count of the complaint the defendant demurred upon the ground that said count fails to show the identity of the person whose negligence is complained of.

To the ninth count the defendant demurred upon the following grounds: 1st. Said count fails to show that the injury complained of was the proximate result of any negligence of Riley in giving the instruction or order as stated. 2d. Said count fails to show that the injury was the result of the plaintiff's having obeyed any order of Riley.

The demeurrers to each of these counts were over-ruled.   Thereupon the defendant pleaded the general issue and by special pleas set up the contributory neg-ligence of the plaintiff.

The defendant separately excepted to the following separate portions of the court's general charge to the jury:   (1.) "That if a person by his own negligence gets himself in a dangerous position, and afterwards his employer, or his employer's servant, who is doing his proper work, sees the danger that his fellow servant is in, or the person who is working under him is in, and he could, by the exercise of reasonable diligence, avoid the peril, and if the person who finds himself in danger does all he can to extricate himself from the danger he got into by his own fault, yet, if the other person nevertheless goes on and fails to use the means at his command to avoid the injury, the peril and injury does result, then the contributory negligence of the person who is injured does not prevent his re-covery because the law says, though he did contribute to put himself into that position of peril, yet, after he was there, the other person seeing his condition and able to avoid the danger, failed and refused to do it, and consequently he, who could have prevented the danger and failed to do it, ought to be made liable in damages for the injury that results."   (2.)  "Suppose that the plaintiff had, through inadvertence or his own negligence, put himself in a position of danger by the way in which he held the bar; suppose that when that stringer was about to be lowered, that it got in a po-sition where a farther fall of it would probably injure the plaintiff.   Now suppose Riley saw it, saw the con-ditions; and suppose he could by his conduct, by fail-ing to give an order, or by the manner in which he should direct the work to be done, suppose, seeing the plaintiff's peril, he should nevertheless have given an order, or directed the work to be done in such a man-ner as that he would see injury might result to the plaintiff, then if the plaintiff was not guilty of any further negligence, it was Riley's duty to have saved him from harm, and if, after the plaintiff's negligence

while he was in danger, Riley nevertheless did that
which a sensible man would not have done, and which
might have resulted in injury, then the plaintiff's negli-
gence, the law says, was not the proximate cause of the
injury, but was the result of Riley's negligence, and
would hold the company responsible notwithstanding
the fact that plaintiff himself was negligent." (3.)
"But if A. by his negligence, gets himself into a per-
ilous position, and the company, through its servants,
sees his perilous position, and can, by the exercise of
reasonable diligence, prevent the injury, but neverthe-
less goes on, regardless of A's peril, and does a subse-
quent act, which causes the injury and which he knew
might cause the injury, and which he might as well
have avoided doing, then, because of the company,
through its servants doing that subsequent act, the law
says it is liable in damages notwithstanding the first
negligence of the plaintiff in getting himself into the
perilous position." (4.) "But if the plaintiff, the em-
ployé, be guilty of negligence, and the company sees
his danger, and can by a subsequent act remove the
risk—remove the danger—save him from harm, and
they do not do it, then, notwithstanding the prior neg-
ligence of the plaintiff, he can recover for the failure
of the company to use reasonably precautionary meas-
ures to save him from his peril." (5.) "If the com-
pany was guilty of negligence in the matter of the ways,
works, machinery or plant that it furnished to the
plaintiff to do the work with, and the plaintiff was
himself guilty of no negligence, then he can recover
in damages, whether Riley was guilty of negligence
or not." (6.) "But if there be a defect in a rope that
is to be used, or any other part of the plant or ma-
chinery, and if ordinary care and prudence would
suggest to the company that it is dangerous to use
that rope, that you ought not to use that because of
the probable danger, it is better to get another one,
if the company knows of the defect and fails to remedy
it in a reasonable time, fails to get another rope when
it can get it, then the use of that rope would be negli-
gence which would entitle the defendant to recover, if

he received an injury on account of the defect of that rope, if he was without fault himself." (7.) "But if he was guilty of no negligence, then he could complain of the defect, if the defect was such as a person of ordinary care and prudence would not use the defective thing under those conditions, and if the company knew of the defect and failed in a reasonable time to remedy it."

The defendant then requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (1.) "If the jury believe the evidence they must find for the defendant." (2.) "If the jury believe the evidence they can not find for the plaintiff under the first count of the complaint." (3.) If the jury believe the evidence they can not find a verdict for the plaintiff under the second count of the complaint." (4.) "If the jury believe the evidence they can not find a verdict for the plaintiff under the third count of the complaint." (5.) "If the jury believe the evidence they can not find a verdict for the plaintiff under the fourth count of the complaint." (6.) "Under the evidence in this case the rope which is claimed to have been defective was not in and of itself, nor when considered in connection with the use to which it was being put at the time of the injury, a part of the ways, works, machinery or plant connected with or used in the defendant's business, and if you believe from the evidence that the sole cause of the injury was a defect in the rope, your verdict must be for the defendant." (7.) "If the jury believe the evidence they can not find a verdict for the plaintiff under the eighth count of the complaint." (8.) "If the jury believe the evidence they can not find a verdict for the plaintiff under the ninth count of the complaint." (9.) "If the jury believe the evidence they can not find that the acting foreman, John Riley, was guilty of any wanton, willful or intentional wrong." (10.) "In actions by employees against their employers under section 1749 of the Code of 1896 there can be no recovery based on or arising from the wanton, willful or intentional wrong

of their employers, or their servants or agents." (11.) "If you believe from the evidence that Moore was leaning over too far towards his bar, and that this fact proximately concurred with the defendant's negligence to cause the injury, your verdict must be for the defendant." (12.) "There is no evidence that any order of the acting foreman, Riley, was the proximate cause of the injury." (13.) "There is no evidence that the condition of the rope caused or contributed to cause the injury." (14.) "As to that count of the complaint claiming a recovery on account of the frayed or defective condition of the rope, the court charges you that the plaintiff can not recover unless you find from the evidence: 1, that the rope was frayed or defective; 2, that such condition of the rope was the proximate cause of the injury; 3, that defendant had such knowledge of the frayed or defective condition of the rope; as that it had reasonable time to remedy or replace same; 4, that plaintiff did not have such knowledge of the frayed or defective condition of the rope; 5, that plaintiff was not guilty of contributory negligence as to his own position, and unless you can answer each and every one of the five foregoing propositions in the affirmative, from the evidence, your verdict must be for the defendant." (15.) "If the jury find from the evidence that a crack between a tie and the stringer upon which it lay is what caused the rope to catch and not the frayed or defective condition of the rope, and that such catching of the rope was the proximate cause of the injury, then the plaintiff can not recover." (16.) "If the jury believe from the evidence that plaintiff assumed a position, after placing the bar on the cap, so as to rest his weight upon the bar, and so that upon its sudden removal he would probably lose his equilibrium and fall, and that he had knowledge of the peril of the position so assumed by him, he would be guilty of contributory negligence, and your verdict must be for the defendant."

There were verdict and judgment for the plaintiff, assessing his damages at $2,500. The defendant ap-

peals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

SMITH &. WEATHERLY, for appellant.—The statute does not create a cause of action based upon a wanton, willful or intentional wrong done or inflicted by the master upon his servant. This statute modifies the common law relationship between master and servant, and should be strictly construed. Its main purpose was to create a liability of the master to the servant for the negligent acts or omissions of fellow servants in certain cases of contingencies not embraced by the rules of the common law. The question is presented whether or not, when the legislature uses the term "negligence" in the employers' act, it can be legally inferred that they intended by the use of the term to embrace an act willfully or wantonly or intentionally done. We say not. The term negligence has a technical meaning. Our court, in a leading case, has held that the term negligence does not include a willingness to inflict injury, or any element of willfulness, wantonness or intention, but that the term negligence embraces only those acts or omissions which result from mere inattention, inadvertence; and conversely, that an intentional, willful or wanton act or omission is, strictly speaking, not negligence at all.—*Ga. Pac. R. R. Co. v. Lee*, 92 Ala. 270. The principle in this case has been followed so often, and has been so fully elaborated by other decisions of this court, that it may be accepted not as fundamental.—*L. & N. R. R. Co. v. Markee*, 103 Ala. 160; *Jones v. Railroad Co.*, 107 Ala. 400. Furthermore, it has been held that under this act there can be no recovery of punitive damages. *Railroad Co. v. Orr*, 91 Ala. 548 and authorities cited under section 1749 of the Code.

The demurrer to count eight should have been sustained, because it fails to aver the name or show the identity of the person whose negligence is complained of, or that his name or identity were unknown to the plaintiff.—*Woodward Iron Co. v. Herndon*, 114 Ala. 191; *So. Ry. Co. v. Cunningham*, 112 Ala. 496.

The plaintiff's demurrer to the defendant's sixth plea was improperly sustained.—*Martin v. M. & C. R. R. Co.,* 117 Ala. 367.

Charge No. 14, it seems to us, asserts a sound proposition of law. It is referable solely to that count in the complaint, or to those counts in the complaint claiming a recovery on account of the frayed or defective condition of the rope, and, therefore, no evidence of willful or wanton negligence on the part of the defendant is involved. The first four propositions stated in the charge have been clearly announced by this court.—*Seaboard Mfg. Co. v. Woodson,* 94 Ala. 143; *Conrad v. Gray,* 109 Ala. 130; *R. R. Co. v. Allen,* 99 Ala. 359; *R. R. Co. v. Binion,* 98 Ala. 570; *Thompson v. R. R. Co.,* 91 Ala. 496.

Charge No. 4, requested by the defendant, should have been given, to-wit, that there could be no recovery under the third count of the complaint.—*Bridges v. Tenn. C. I. & R. R. Co.,* 107 Ala. 287; *B. R. & E. Co. v. Baylor,* 101 Ala. 497; *Smith v. Causey,* 28 Ala. 655; *Highland Ave. & Belt R. R. Co. v. Dusenberry,* 94 Ala. 413.

DANIEL A. GREENE, *contra.*—The demurrer to the first count of the complaint was properly overruled. After showing a duty, a mere general allegation of negligence is sufficient.—*Mary Lee Co. v. Chambliss,* 97 Ala. 171; *Ga. Pac. R. R. Co. v. Davis,* 92 Ala. 307; *K. C. R. R. Co. v. Broslin,* 114 Ala. 398; *Laughran v. Brewer,* 113 Ala. 509. Nor is it necessary to negative the fact that defendant knew or could have known the danger or defect.—*M. & O. R. R. Co. v. George,* 94 Ala. 199; *K. C. &c. R. R. Co. v. Broslin,* 114 Ala. 398; Reno on Employer's Liability, § 35; *C. & W. Railway v. Bradford,* 86 Ala. 574.

The demurrers to the second and fourth counts, as amended, are directed purely to the right of recovery as based upon willful or wanton negligence, and will be treated together with the charges on that subject.

The demurrer to the third count was properly overruled. Two or more concurrent causes of negligence may be conjunctively averred.—*B. R. & E. Co. v. Bay-*

*lor*, 101 Ala. 497; *Bridges v. T. C., I. & R. R. Co.*, 107 Ala. 287; *H. A. & B. Co. v. Sampson*, 112 Ala.428.

The demurrers to the eighth count were properly overruled.  It is definitely settled in this court that it is not necessary to allege the name of the person entrusted with the duty of seeing that the ways, works and machinery were in proper condition.—*McNamara v. Logan*, 100 Ala 187; *Woodward Iron Co. v. Herndon*, 114 Ala. 191.

The rope, defective condition of which is complained of, was a part of the machinery or plant, which was used regularly in carrying on the business in which defendant was engaged at the time of the injury complained of.  It was not a mere temporary or accidental obstruction.—Roberts & Wallace's Employer's Liability, 247, 251; *L. & N. R. R. Co. v. Bouldin,*, 110 Ala. 185; *K. C. R. R. Co. v. Burton*, 97 Ala. 240; *Ga. Pac. R. Co. v. Brooks*, 84 Ala. 138; *U. S. Roll. Stock Co. v. Weir*, 96 Ala. 396.

The demurrers to the second and fourth counts of the complaint were properly overruled.  An employee can recover from his employer for the willful or wanton negligence of another employee.—*L. & N. R. R. Co. v. Markee*, 103 Ala. 160; *Jones v. Ala. Min. R. R. Co.,* 107 Ala. 400; *H. A. & B. R. R. Co. v. Sampson*, 112 Ala. 425.

McCLELLAN, C. J.—Action under section 1749 of the Code—Employer's Liability Act—by Moore against Southern Railway Co., sounding in damages for personal injuries.

By demurrer to certain counts of the complaint, by exceptions to certain portions of the oral charge and to the refusal of the court to give certain instructions requested by it, the defendant reserved in the trial court and now presents here the question whether an employer is liable in damages under the statute for the wanton, willful or intentional misconduct of an employé inflicting personal injury upon another employé.  This question is not only not *res integra* in this State, but it has been adjudged by this court in the

affirmative, and such legislative action upon the statute has been subsequently had as precludes us now to reopen it.    This court seems from its first deliverance upon this statute to have entertained the view that a recovery under it could be had not only for *negligence,* strictly speaking, but also for any wrong of fellow servants committed in respect of the condition of the ways, works, etc. (being charged with their proper condition) of the employer, or in the exercise of superintendence intrusted to them by the master, or in the giving of orders about the business of the master to which the complaining servant was bound to conform, when injured as a consequence of such conformity, or in any act or omission done or made in obedience to the rules, etc., etc., of the employer, or in the charge or control of signals, points, locomotives, etc., etc., upon a railway, etc.    For in the case of *Stewart v. Louisville & Nashville Railroad Co.,* 83 Ala. 493, which appears to be the first consideration of the enactment by this court, it is said: "The controlling purpose of the statute was to give to workmen, laborers, employés, a remedy against their employers for injuries suffered through the wrongful or negligent conduct of the latter; in other words, to relieve them of the discriminating disabilities under which they had heretofore labored—to give for the benefit of their heirs at law—next of kin—in the event death had ensued for the injury, the same compensation and remedy against the employer as if the decedent had not been a survivor, workman, or laborer for the person or corporation offending."    Now to give the injured employé the same compensation and remedy against the employer as an injured stranger would be entitled to under the same circumstances would be to give him compensation, and a remedy to recover it, for injuries resulting from the willful, wanton or intentional misconduct of the employer's servants, since the stranger would have that right and remedy in such case; and it would seem that the expression, "wrongful *or* negligent conduct," in the foregoing excerpt, was employed in line with the idea that the employé should

have all the rights in respect of the quality of causal act as being either negligent or otherwise wrongful that a stranger would have. Moreover, it was further ruled in *Stewart's Case*, that the words of the statute, "in case the injury results in death, the heirs at law of the workman shall have the same rights and remedies," as if he were a stranger, had reference to section 2641 of the Code (section 27 of the present Code), commonly known as the "Homicide Act," since that was the only law then of force giving a right of action for injuries resulting in death; and the implication would be that these words, therefore, gave the injured employé the same rights which that act gave to strangers; and as that act was held to be punitive of willfulness, wantonness and intentional wrong as well as of negligence, the further implication would seem to be that, though the Employer's Act was limited to compensation in express terms, yet it was intended to provide compensation for injuries wantonly, willfully or intentionally inflicted, as well as those resulting from negligence.

So we read and interpret *Stewart's Case*. But whether we correctly so interpret it or not, and whether so interpreted it is a sound exposition of the statute or not, the fact is and remains that for years after the enactment of the Employer's Liability Act the construction which that adjudication tends, at least, to put upon it was assumed to be its true construction by the bench and bar of the State without question, and very many cases brought into court under the act were tried below and reviewed here upon that assumption, and many verdicts were found below and the judgment upon them affirmed, or dealt with here upon the theory that employés had a right of action under the act for the wanton, willful or intentional misconduct of fellow servants as well as for their mere negligence. The following are some of these cases: *Kansas City, Memphis & Birmingham Railroad Co. v. Crocker*, 95 Ala. 412; *Richmond & Danville Railroad Co. v. Farmer*, 97 Ala. 141; *Lee v. De-Bardelaben Coal & Iron Co.*, 102 Ala. 628; *Chambliss v.*

*Mary Lee Coal & Railroad Co.*, 104 Ala. 655; *Ala. Gt. So. R. R. Co. v. Hall*, 105 Ala. 599; *Louisville & Nashville Railroad Co. v. Markee*, 103 Ala. 160; *Louisville & Nashville Railroad Co. v. Crawford*, 89 Ala. 245; *Louisville & Nashville Railroad Co. v. Watson*, 90 Ala. 68; and there are many others. And in *Louisville & Nashville Railroad Co. v. Trammell*, 93 Ala. 350, there was more than an *assumption* of the liability of the master under the statute for the wanton or willful misconduct and for the intentional wrong of the employé: there was a *decision* that he was so liable. That cause was tried without jury below and the presiding judge found for the plaintiff, Trammell. On appeal it was our duty to review the conclusion of fact reached by the trial judge. The action was by the administrator of an employé against the employer for injuries suffered at the hands of a fellow servant. The complaint alleged that an employé of the defendant then and there in charge and control of a locomotive on defendant's railway, etc., wantonly, willfully or intentionally ran upon and against the person of plaintiff's intestate and killed him. This court found on the evidence that the intestate came to his death by the engine striking him, and proceeded: "Finding that Trammell was stricken by the engine itself, in the manner deposed to by these witnesses, he must have been in dangerous proximity to the track, according to a preponderance of the evidence, for sometime before the collision; and not only so, but he was oblivious of the approach of the train; and both his proximity to the track and ignorance of the peril must have been known to the engineer. Under these circumstances, the latter's failure, in the presence of known danger, to use all means in his power to avoid striking the intestate, it appearing that preventive effort would have been effectual, was such recklessness or wantonness as supports the averments of the complaint as to willfulness and intentional wrong, not to speak of, or base our conclusion upon the evidence of an expressed willingness on the part of the engineer to run down upon Trammell [the intestate]. We are, therefore, sat-

isfied of the correctness of the trial court's view of the facts of the disaster." And upon this ground, that defendant's engineer had willfully or intentionally killed plaintiff's intestate, the judgment for plaintiff was affirmed. And not only so, but in discussing the measure of damages in such cases, this court declared in terms that a recovery could be had under the statute for willful and intentional wrong on defendant's employé inflicting death or injury upon a fellow employé, the precise words being that " while the abstract right of recovery may depend [that is would depend where there was contributory negligence] upon such recklessness or wantonness on the part of defendant as will overcome the defense of contributory negligence, yet that consideration cannot be looked to to enhance damages beyond the point of compensation." We do not know whether counsel in that case took or pressed the position that no recovery could be had under the statute for willfulness and the like, and it is immaterial to this discussion and to the conclusion we have in view whether they did or not. If we were proposing now to review the decision in *Tramwell's Case* on its inherent merits, the fact that the point decided there was not referred to or elaborated in argument, would be proper for consideration. But the inquiry here is not whether that case is sound, but solely whether the point we have here was *decided* in it; and the amount and character of the discussion and consideration given to the point can have no bearing upon the question whether the point was in fact passed upon. That it was expressly and necessarily passed upon and directly *decided* there can be no doubt. And the decision of it, in line with the interpretation outlined above of *Stewart's Case* and with the assumption of liability indulged in the numerous other cases cited *supra*, to all intents and purposes put a construction on the Employer's Liability Act, then constituting section 2590 of the Code of 1886, and now embodied in section 1749 of the present Code, to the effect that the employers were liable under it for the wantonness, willfulness and intentional wrong of their employés whereby injury is

inflicted upon other employés. The *Tramwell Case* was decided at the November term, 1890, of this court. With the construction which it then put upon section 2590 of the Code of 1886, that section was re-enacted by the legislature five years later in the adoption of the Code of 1896; and thereby the construction became a part of the statute itself, foreclosing all inquiry as to the correctness of the decision which originally put the construction upon the act.—*Richmond & Danville Railroad Co. v. Freeman,* 97 Ala. 289, 296. And it is upon the foregoing considerations that we rest our conclusion that recovery may be had for wantonness, willfulness, and the like, inflicting injury, under section 1749 of the Code.

The bill of exceptions purports to set out all of the evidence adduced on the trial. We find no evidence in it tending to show that Riley's order to plaintiff with reference to holding the iron bar on the cap was a negligent order, or that plaintiff's injury resulted proximately from his having conformed to it; nor do we find any evidence tending to show that plaintiff's injuries resulted from the defective condition of the rope used for lowering the stringer into place; and the general charges requested by defendant as to the counts which respectively set up a negligent order by Riley, etc., and the defective condition of the rope, etc., should have been given. Moreover, the rope as used on the occasion of plaintiff's injury was not a part of the ways, works, machinery or plant of the defendant; and the demurrer to the count of the complaint which averred a defect in the rope, etc., as the cause of the injury should have been sustained.—*Ga. Pac. R'y. Co. v. Brooks,* 84 Ala. 138; *Clements v. Ala. Gt. So. R. R. Co.,* 127 Ala. 166.

Other questions presented by this record will not arise upon another trial.

Reversed and remanded.