# White *v.* The State.

|134 197|
|138 107|

*Petition for Habcas Corpus.*

1. *Effect of appeal in felony cases; sentence can only be suspended by order of court.*—The taking of an appeal from a judgment of conviction has not, *ipso facto*, the effect to suspend the sentence upon such judgment while the appeal is pending in the appellate court, and nothing but the order of the court which has imposed the sentence can suspend its execution; and, therefore, in a case where the defendant is convicted of a felony, and has reserved questions of law for the consideration of the Supreme Court, and has taken an appeal to said court, but the execution of such sentence is not suspended by the order of the court rendering it, the detention of the defendant in the county jail by the sheriff pending such appeal is unlawful and unauthorized.

2. *Same; same; defendant should be committed to the custody of the penitentiary officials.*—Where a defendant is convicted of a felony and the sentence of the court is imposed upon him and he prosecutes an appeal to the Supreme Court from such judgment of conviction and sentence, but the court rendering said judgment does not make the order suspending the execution of the sentence, while detention of the defendant by the sheriff in the county jail upon such appeal is unlawful, such defendant is not entitled to be discharged absolutely because of such unlawful detention, but his only right is to be discharged from that custody and committed to the custody of the board of convict inspectors under the sentence pronounced by the court.

APPEAL from the order of a Chancellor denying petition for discharge on *habcas corpus.*

Heard before the Hon. WILLIAM H. SIMPSON.

The facts of the case are sufficiently stated in the opinion.

TATE & WALKER, for appellant.

CHAS. G. BROWN, Attorney-General, for the State.—
The defendant is not entitled to be set at liberty, even

though he might be entitled to be discharged from the unlawful custody of the sheriff and confinement in jail of the county. There being at the time of the filing of the petition for *habeas corpus,* and at the time of the hearing of the same, a system of penitentiary imprisonment, he was entitled to be remanded to the proper custodian of the penitentiary.—*Ex parte Buckalew,* 84 Ala. 462; *Ex parte Herrington,* 87 Ala. 1; *Ex parte Cameron,* 81 Ala. 90.

McCLELLAN, C. J.—Sam White, the appellant, was tried at the spring term 1901 of the Jackson circuit court on an indictment charging him with the murder of Mary Williams, was convicted of murder in the first degree (March 28, 1901), and sentenced (March 30, 1901) to imprisonment in the penitentiary for life in accordance with the verdict of the jury. Questions of law were reserved on the trial by the defendant for the consideration of the Supreme Court, and upon his conviction it was made known to the circuit court that he desired to take an appeal to the Supreme Court, and his counsel moved said circuit court to suspend the execution of the judgment and sentence against him pending said appeal. The presiding judge, in response to said motion, informally signified his purpose to grant the same, but failed to enter upon the docket any direction to the clerk for the entry of an order of suspension, and no order or memorandum for such order was made or entered on the docket or in the minutes of the court: In short, no order suspending said judgment was entered or made. The defendant in due time presented his bill of exceptions to, and had it signed by, the presiding judge, filed the same in the office of the clerk of the trial court, and in all things duly perfected his appeal to this court, and on and prior to May 8, 1902, the same was pending in this court, the transcript of the record of the court below and of the bill of exceptions having theretofore been made out by the clerk of the circuit court and transmitted to the clerk of this court and filed in this court. On said day, May 8, 1902, the defendant, said Sam White, presented a petition to Hon. Wm. H. Simpson, Chancellor

[White v. The State.]

of the Northern Division, wherein he set forth the facts of his indictment, trial and conviction as above stated, and whereto he attached as exhibits copies of the judgment and sentence of the circuit court, and made the following additional averments: · "The petitioner having reserved questions of law for the consideration of the Supreme Court, appealed the case to the Supreme Court of Alabama and the case is now pending in said court. The sentence of the petitioner to the penitentiary was never suspended by an order of the Jackson county circuit court, and the petitioner has been ever since said sentence confined in the jail of Jackson county, Alabama, and petitioner alleges that such detention is unlawful, as he is informed and believes." Wherefore he prayed for the issuance of the writ of *habeas corpus* to the sheriff of said county commanding him to bring the body of the petitioner before the chancellor, etc., etc., "together with the cause of detention of petitioner." As has been indicated there was no order suspending the execution of the sentence either in the judgment entry or the sentence exhibited to the petition, but appended to the sentence as shown in the exhibit is this: "It is ordered by the court that 30 days be allowed for bill of exceptions after adjournment of court." The writ issued in accordance with the prayer of the petition; and in obedience to it the sheriff produced petitioner before the chancellor, and made return to the writ setting forth that he held the petitioner under said judgment of conviction and sentence, and the facts hereinbefore stated as to questions of law having been reserved on the trial, petitioner's motion for suspension of sentence, his filing bill of exceptions and taking appeal, the pendency of the same in the Supreme Court, etc., and some facts and circumstances intended to show that the prisoner had consented or was content to remain in his custody pending the appeal instead of being imprisoned in the penitentiary under the sentence of the court. The chancellor was of opinion that the petitioner's appeal to this court suspended the sentence against him till it should be determined and that meantime he was rightfully in the custody of the sheriff of Jackson county, and thereupon it was ordered that pe-

titioner be committed to such custody. From that order this appeal is prosecuted.

The main, indeed, the sole question thus presented for review is whether the taking of an appeal from a judgment of conviction of a felony has, *ipso facto,* the effect to suspend the sentence upon such judgment while the appeal is pending in the appellate court. The question must turn upon our statutes and the construction that has been impressed upon them by decisions of this court, for the right of appeal in criminal—not to speak of civil—cases is purely the creature of statute; and the time and manner of exercising the right in a given case is prescribed by the statute, and the effect of its exercise upon the judgment appealed from must be found in statutory provisions.

The first statute in Alabama authorizing appeals in criminal cases was enacted as part of the Code of 1852, having been embraced in that body of laws under the powers of the commissioners to prepare a new Code of practice. That statute, so far as it bears upon this case, was as follows: "§ 3649. Any question of law arising in any of the proceedings on an indictment, may be reserved by the defendants, but not by the State, for the consideration of the Supreme Court." "§ 3650. If such question does not distinctly appear on the record, it must be reserved by an exception taken and signed by the judge as in civil cases." "§ 3652. When any question of law is reserved, the presiding judge must render judgment on the conviction; but the execution of the judgment in cases of misdemeanors, must be suspended until the next term of the court, or the defendant may give bail, with sufficient securities, to appear at such court, and abide the judgment rendered." "§ 3656. In cases punishable capitally, or by imprisonment in the penitentiary, judgment must be rendered; but the execution thereof suspended for at least sixty days after the commencement of the next succeeding term of the Supreme Court." It is clear, we think, that under these original sections an order of the court was necessary to effect the suspension of sentence provided for in them. It is to be noted that alternative courses in respect of the

[White v. The State.]

execution of the judgment, or rather its non-execution, after appeal are provided in section 3652, that is the judgment was either to be suspended *or*, not being suspended, the defendant was allowed upon taking the appeal to give bail for his appearance at the next term of the trial court and abide the judgment rendered. It is, of course, clear in view of these provisions that the mere fact of reserving questions of law on the record or by bill of exceptions provided for in sections 3649 and 3650, nor the taking or pendency of the appeal did not *suspend* the judgment within the meaning of section 3652, since the suspension there provided for after all things necessary to an appeal required to be done by the defendant had been done, might not be had at all, but instead and in lieu of any suspension and without any such suspension as the section contemplates, the defendant might give bail for his appearance, etc., at the next term of the court. So that.it follows from the provisions of this section that something more than the reservation of a question of law on the trial, and something more even than the perfecting of an appeal is essential to the *suspension* of the judgment under it. That something more can be naught else than an *order of the court suspending the judgment;* and where no such order is made there can be no, suspension within the provisions of this statute. In reference to section 3656 it is to be noted that the provision is not for a suspension of the judgment generally, or pending the appeal, or for any definite time whatever, but "for *at least sixty days* after the commencement of the next succeeding term of the Supreme Court." Of course, it was not intended that the sentence should be suspended forever, or for an indefinite time, but only for such time as should be necessary to prosecute the appeal. Yet if the reservation of questions of law on the trial or the perfecting of an appeal should be accorded the effect of suspending the sentence, the suspension would be without maximum limitation as to time. So that it was equally necessary here, and manifestly the statutory contemplation that the suspension should result, not from the reservation of questions of law, nor from the certification of the transcript to the Supreme Court,

but from an order of the court suspending the execution of the sentence for some definite time, not less than sixty days from the commencement of the next term of the appellate court. These sections have been brought forward into all the Codes since that of 1852, without material amendment bearing upon the mode of suspending the execution of judgments except that in the present Code the sections relating to that subject contain a new provision which goes to strengthen the conclusion that a suspension can only be made by an order of court. The recodifications of section 3652 and 3656 of the Code of 1852 are embodied in sections 753 and 754 of Stone & Shepherd's Penal Code of 1866, in sections 4304 and 4305 of the Revised Code (1876), in sections 4980 and 4981 of the Code of 1876, in sections 4511 and 4512 of the Code of 1886 and in sections 4318 and 4319 of the Code of 1896.

Prior to the last codification of these sections several decisions bearing upon their construction and interpretation in the respect under consideration had been made by this court. All of these decisions, and the opinions handed down in the cases went more or less directly to support that construction of the sections which requires an order of the court to suspend the execution of the judgment when the defendant had reserved questions of law for the consideration of the Supreme Court.—*State v. Lowry,* 29 Ala. 44; *Ex parte Knight,* 61 Ala. 482, 488; *Bolling v. State,* 78 Ala. 469; *Ex parte Cameron,* 81 Ala. 87; *Ex parte Goucher,* 103 Ala. 305.

It would seem that these cases had prior to the present Code put a construction on these statutes, which upon their renactment by the adoption of the present Code, with an amendment which not only did not evince a legislative purpose to change such construction but which, to the contrary, was in the nature of an express legislative affirmation of it, became a *fixed* construction, a part of the statutes themselves as if it had been therein written.—*Barnewall v. Murrell,* 108 Ala. 366, 367; *Richmond & Danville Railroad Co. v. Freeman,* 97 Ala. 289, 296; *Southern Railway Co. v. Moore,* 128 Ala. 434.

But leaving out of view the forms of the original

[White v. The State.]

sections, all their history and all this court has decided or said bearing upon them, and considering them, or rather that one of them, section 4318, within which the present case falls, as it stands today, and treating its construction and interpretation as *res integra,* the conclusion to which we are driven is the same—that nothing but an order of the court which has imposed a sentence can for any purpose suspend its execution. Let the section be first taken as it was, reading thus: "When any question of law is reserved in a case of felony, judgment must be rendered against the defendant, but the execution thereof must be suspended until the cause is decided by the Supreme Court." This language is inapt to provide for suspension except upon some affirmative action other than that hypothesized in the section. It carries no implication that reservation of a question of law suspends the sentence. The only other act referred to in the section is the rendition of judgment, and this is and is stated therein as antithetical to its suspension. It is not said that the reservation of a question of law suspends the judgment, nor that when any question of law is reserved the judgment is suspended, nor anything of that kind. Had that been the purpose of the legislature, it is inconceivable that they would not have used some such form of expression. But instead the expression they have used palpably implies the operation upon the judgment rendered, and, when rendered, in full force of some power or action extraneous to anything named in the section. The execution of the sentence is not said to be suspended by anything postulated in the statute, it is not said *to be* suspended at all; but it is said that the execution of the sentence *must be* suspended. Here we have a judgment rendered and a sentence imposed upon and in accordance with that judgment. That sentence is as potential and as ready for immediate execution as if no question of law had been reserved. Something, the statute contemplates, shall be done to that sentence to prevent its execution to the emasculation of the appeal. That something is its suspension. The statute does not work its suspension. There is but one force that can suspend it. That is the court which rendered it. The command of

the statute is, therefore, laid on the court. The court can act in obedience to the command only by an order of suspension. And this it is that the statute commands the court to do—to enter an order suspending the sentence to the end that the defendant may have the benefit of his reservation before he is put to the sentence which he challenges as unlawful, or as having been erroneously imposed. The language of the statute, in short, is most apt and adequate to impose on the court in the contingency named the duty to suspend the sentence in the only way a court can suspend a sentence, to-wit, by an order on its minutes to that effect. It is wholly inapt and inaccurate to a suspension of the sentence in any other way. And to hold that under it the sentence is suspended or could be by any other means would be to do violence to its clear import.

When this section is considered with the amendment introduced in the last Code as a part of it, the conclusion is all the more evident and inevitable. That amendment is, as we have seen, to the effect that the sentence shall be suspended when questions of law have been reserved only in the event "it shall be made known to the court that the defendant desires to take an appeal to the Supreme Court." This provision makes it plain beyond cavil or doubt that it is not the reservation of questions of law upon the record or by exceptions taken that suspends the sentence, for though questions are reserved in either or both mode, something else must be done before the sentence can be suspended. It is further necessary to the exercise of the power of suspension that defendant's desire to take an appeal "shall be made known to the court." And this information to the court manifestly does not operate the suspension, but only supplies the statutory invocation for the exercise of the court's power to suspend, the predicate for an order of suspension when questions of law have been reserved. Of course, the court always knows when a question of law has been reserved on the record or an exception taken for embodiment in a bill of exceptions, on the trial of a case; but it by no means follows that a defendant who reserves a question of law during the trial

desires to take an appeal at the end of it in his conviction. He may be satisfied with the sentence, fearing a more onerous one upon another trial. Or he may conclude that there is no merit in his reservations, and prefer to enter at once upon the sentence to remaining in jail while his fruitless appeal is pending, and so avoid an useless prolongation of imprisonment. Even when after conviction he has taken an order for an extension of the time for perfecting a bill of exceptions, he may not at that time desire to take an appeal, or he may never perfect a bill of exceptions and thus lose the benefit of the reservations he has brought to the attention of the court in the progress of the trial to be perfected as of that trial by relation when the bill is signed.—*Ex parte Cameron, supra.* And it was because of cases of these kinds, well known to frequently occur in practice, that the statute was amended so as not to require an order of suspension upon the reservation of questions of law unless the defendant should also make known to the court his desire to appeal. But whatever the reasons for the amendment may be, its palpable effect is to authorize suspension of sentence only in the contingency named, and to make it entirely clear that the only suspension of sentence authorized by the statute is one made by an order of the court.

That this is the meaning of the statute—that neither the reservations of questions of law on the trial with a view to appeal nor the perfecting of an appeal and lodgment of the cause in this court operates to suspend the judgment—is further demonstrated by several other sections of the Code. Section 4324, for instance, provides, that when the execution of the judgment has been suspended as provided by the sections we have been considering, *or when an appeal is taken without such suspension,* the clerk shall make out and forward the transcript, etc. etc. Section 4326 provides for the dismissal of his appeal by a defendant at any time before the transcript has been forwarded to the Supreme Court by filing a statement to that effect with the clerk of the trial court, *and that if the judgment has been suspended* such dismissal shall terminate the suspension. Section 4468 provides for the removal of a convict *from the peniten-*

*tiary upon the reversal of the judgment of conviction against* him back to the county of trial. And section 5430 provides for the execution of a death sentence on the day appointed by the court, *"unless such court suspends the execution,* on account of the reference [reservation?] of some matter of law arising on the trial for the determination of the Supreme Court." Each of these sections clearly and necessarily excludes the idea that the reservation of questions of law or the taking of an appeal can in any case operate the suspension of the sentence.

Thus the law is written, and it is wisely so written. Under it there will arise no difficulties in dealing with defendant after conviction. The sheriff after adjournment of the term has only to look to the minutes of the court for an order suspending the sentence. If he finds such order, he keeps his prisoner in the county jail : If he does not find it, he delivers him to the penitentiary authorities, or otherwise proceeds with the execution of the sentence of the law pronounced by the court. If it were the law that the reservation of questions of law or the taking of an appeal suspended the sentence, it is easy to see that many difficulties would arise. What, for example, would the sheriff do with a convict who had been granted time beyond the term to perfect his inchoate reservations of questions of law by presenting a bill of exceptions? Especially as the inchoate reservations when thus perfected relate back and have effect as of the term of trial? And more especially when the convict may never perfect his inchoate reservations at all—may never prepare a bill of exceptions? These suggestions uncover only some of the difficulties that would arise. Others will suggest themselves. The subject needs but cursory consideration to a demonstration of the wisdom of the legislature in providing for a suspension of sentence by the only regular and orderly mode the sentence of a court can be suspended—by an order of the court which pronounced the sentence.

We attach no importance to the suggestions in the sheriff's return intended to show that the prisoner's continued confinement in the county jail after he should

have been sent to the penitentiary was in accordance
with his, the prisoner's, wishes. A man cannot legalize
his incarceration by this sort of *quasi* convention be-
tween himself and the sheriff, nor estop himself to de-
mand enlargement from illegal imprisonment by hav-
ing at one time unavailingly asked the court, having
jurisdiction in the premises, to order that he be so con-
fined instead of being put to the sentence which had
been imposed on him or by a personal preference for the
county jail as against the State penitentiary as a place
of confinement. Moreover, he was not kept in jail be-
cause of any such preference on his part, but because
the sheriff supposed that the sentence against him had
been suspended.

An expression of the present writer in the case of
*State v. Roberts,* 126 Ala. 87, may have had something
to do in leading the chancellor to the conclusion that
the taking of an appeal itself suspended the sentence.
It was there said that the effect of an order of this court
setting aside a dismissal of an appeal and reinstating it
was to suspend the judgment and sentence. This with
what was said in the same opinion in stating the posi-
tion of counsel naturally tended to the conclusion that
the court entertained the view that the appeal itself sus-
pended the sentence. But as matter of fact the sentence
in that case had been suspended by a formal order of
the trial court, and, having reference to that fact, the
effect of the order here reinstating the appeal was also
to reinstate the suspension order of the trial court, and,
through that, to suspend the sentence in that court.

Our conclusion upon this part of the case, therefore,
is that the chancellor was in error in holding that the
sentence of petitioner was suspended by the appeal, and
that consequently he was rightfully imprisoned by the
sheriff in the county jail.

But it by no means follows that the petitioner is en-
titled to be discharged absolutely. He is in the custody
of a person who "is not the person authorized by law to
detain him, the penitentiary authorities, and the full
measure of his right is to be relieved of the unlawful
restraint and remanded to such lawful custody, sub-
jected to the restraint provided by the unsuspended sen-

tence against him. The case of *The State v. Roberts,* *supra,* (126 Ala. 87) is an authority for this proposition. There the sentence was suspended by an order of court and of consequence the sheriff was the defendant's lawful custodian pending the appeal. The prisoner notwithstanding this, however, was delivered to and imprisoned by the officers of the penitentiary under the supposed authority of the suspended sentence. These persons were not—as the sheriff is not here—"authorized to detain him." The city judge discharged him on *habeas corpus* from the custody of the penitentiary people, but remanded him to the custody of the sheriff. This order was made on the theory that the judgment against the prisoner was void and that the sheriff was entitled to hold him for trial in the *nisi prius* court; but it was affirmed on the ground that the sentence on the judgment had been suspended pending an appeal, and that because of such suspension the sheriff and not the officers of the penitentiary was charged with his custody.

The principle upon which we proceed in this case of *The State v. Roberts,* appears to have been recognized by this court in the cases of *Kirby v. State,* 62 Ala. 51; *Ex parte Pearson,* 59 Ala. 654 (which, we believe, was the first case of unreasonable detention by sheriff after conviction) ; *Ex parte Goucher,* 103 Ala. 305 (which was the last) ; *Ex parte Crews,* 78 Ala. 457 ; and *Ex parte Stewart,* 98 Ala. 66 ; and the absolute discharge of the convict in each of those cases is rested upon the considerations that he had been detained by the sheriff in the county jail for an unreasonably long time after sentence to hard labor for the county, *and that the commissioner's court had not provided for any place for his imprisonment under such sentence.*

The report of the case of *Ex parte Rand,* 99 Ala. 302, does not show whether a place of confinement at hard labor had been provided by the commissioner's court, but the record of the case does show that such provision had been made. As that case and *Ex parte Goucher,* *supra,* were decided by the same bench and the opinion in each was prepared by the same judge, and as in *Goucher's case* the fact that no such provision had been

made by the commissioner's court was made one of the bases for the petitioner's absolute discharge, it is fair to assume that this consideration was inadvertently pretermitted in *Rand's case,* and we do not regard the decision in that case as being an authority against the doctrine recognized in the other cases cited, some of which were decided before and some after that decision.

The consideration adverted to was not mentioned in the case of *Ex parte King,* 82 Ala. 59; but King's discharge was *denied* upon the ground that he had not been detained for an unreasonable time after conviction, and, of course, that case cannot be considered as at all militating against the proposition that where, in such cases, there are persons entitled to the defendant's custody under the sentence, he will not be discharged absolutely but will be discharged from the custody of the sheriff and committed to the lawful custody provided by the sentence.

Upon our former cases, therefore, we adhere to and reaffirm the ruling in *Roberts' case, supra,* and in line with it and then hold in this case that the petitioner was not entitled to be discharged absolutely because of his unlawful detention by the sheriff, but that his right was and is to be discharged from that custody and committed to the custody of the board of convict inspectors, under the sentence pronounced by the court.

Accordingly, the order of the chancellor remanding the prisoner to the custody of the sheriff for confinement in the county jail will be reversed, and judgment will be here entered discharging him from that imprisonment but remanding him to the custody of the board of convict inspectors for confinement in the penitentiary, and directing the sheriff to immediately deliver him into such custody.

Reversed and rendered.