RITTER, *Appellant*, v. THE DEMOCRATIC PRESS COMPANY.

1. **Equity will Relieve against Fraudulent Judgment.** A court of equity will relieve against a judgment obtained against a defendant by a fraudulent combination between his co-defendants and the plaintiff; but this jurisdiction is rarely and reluctantly exercised. The case ought to be a very plain one to authorize interference.

2. **Disqualification of Convict as Witness.** A person who has been convicted of obtaining money under false pretenses, and has been sentenced to the penitentiary, is not a competent witness; and the fact that his sentence has been suspended by an appeal and order of supersedeas does not remove or suspend the disqualification.

3. **Agreement before trial to Release one Defendant, no fraud on his Co-defendants.** The fact that before the trial of a cause an agreement was made between the plaintiff and one of the defendants that the latter should be released on paying a very small part of the demand, does not, of itself, render a judgment subsequently obtained against all the defendants fraudulent as respects one of them who was not aware of the agreement.

*Appeal from Pettis Circuit Court.*—HON. WM. T. WOOD, Judge.

*E. J. Smith* for appellant.

*Philips & Vest* for the Democratic Press Company.

NAPTON, J.—During the political campaign of 1870, it was deemed desirable by a party termed " Liberal Republicans" to establish a newspaper at Sedalia, in the 5th Congressional District. Sundry candidates on this ticket, in conjunction with leading politicians, instead of starting such paper on an independent basis, concluded it more advisable to make an arrangement with a company who already owned a press to publish their proposed paper, and under this arrangement eight persons, among whom was the plaintiff, were named in the newspaper printed in pursuance of this arrangement as a board of managers. The canvass proved unsuccessful, and the company who owned the Democratic Press sued these managers for $938.08 as ex-

penses of printing, &c.  They dismissed as to one of the defendants, and recovered a judgment against the others, on 10th day of February, 1872.  The plaintiff in this case was one of those against whom judgment was rendered. Upon an execution, he paid $278.33, which was his share and that of one O'Bannon, who had died since the judg- ment.  Why he paid O'Bannon's share is not explained.

The present action was commenced at the May term, 1875, of the circuit court.  In this suit the plaintiff asks the interposition of the court, as a court of equity, either to grant him a new trial, or, at all events, to decree a return of the money he has paid, on the ground, that three of his co-defendants in the first suit had colluded with the plaintiff, and had made such arrangements with the plaintiff as would diminish or discharge their liabili- ties, without the knowledge of this plaintiff—that one of them, Saunders, had paid $300 more than was credited to him and had a receipt for the same, but did not in his evi- dence on the first trial disclose this—that another of them, Richardson, was let off by paying $25, under a previous agreement, not known to plaintiff—and that Smith, the third party named, had an arrangement with the press company by which his responsibility was limited to one- sixth.  The plaintiff alleges that the defenses of these three defendants were sham defenses—and that he never discovered this until after he paid his $278.33.  He, there- fore, asks that this judgment be set aside, and that he recover the $278.33 from the plaintiff in the former suit or from his co-defendants, Smith, Saunders and Richardson.

The jurisdiction of courts of equity over cases of this sort is conceded.  In *Duncan v. Lyon*, 3 John. Ch. 365, Chancellor Kent says: "It is a settled principle that a party will not be aided after a trial at law, unless he can impeach the justice of the verdict on grounds of which he could not have availed himself, or was prevented from doing it by fraud or accident, or the act of the opposite party, unmixed with negligence or fault on his part." At

the same time it will be observed, as may be inferred from the cautious observation of Chancellor Kent, that this power in courts of equity is rarely and reluctantly exercised. All courts have recognized the wisdom of Lord Redesdale's remark that " it is more important that an end should be put to litigation than that justice should be done in every case." The amount involved in this case is $278.33, or rather the half of that sum; it originated in a political campaign which turned out disastrously; it has once been submitted to a jury and the co-defendants of the present plaintiff, who were compelled to pay a much larger sum than the plaintiff, have acquiesced in this verdict, and it would, under these circumstances, require a very plain and palpable case, to authorize interference by a court of equity.

The plaintiff in this case does not charge that he was not liable as one of the managers of this newspaper. That question was passed on by the jury in the former case, and nothing is alleged in the petition in the present case to authorize its re-examination. But conceding his liability, the plaintiff insists that the collusion between the plaintiff in the original suit and Richardson and Saunders, two of his co-defendants, prevented him from producing, on that trial, testimony that would have materially reduced his pecuniary liability. Of course the circuit court excluded all evidence offered in the present case designed to show that the plaintiff was not responsible at all. The propriety of this exclusion could not be doubted. It was not pretended that any new evidence had been discovered on this point, or that the present defendants had done anything to suppress such evidence, or prevent its introduction in the former suit.

One of the principal grounds of complaint here, is that Saunders, one of the co-defendants of plaintiff in the former action, was not allowed to testify. He had been indicted for obtaining money under false pretenses, and had been convicted by a jury, but had appealed to this

court and obtained a supersedeas. He was brought to court, on the trial, by the sheriff, and offered as a witness, but the court excluded him. Our statute (Wag. St. 67, p. 465) provides that " every person who shall be convicted of arson, burglary, robbery or larceny in any degree in this chapter specified, or who shall be sentenced to imprisonment in the penitentiary for any other crime punishable under the provisions of this chapter, shall be incompetent to be sworn as a witness, &c." Section 47 provides that "every person who, with intent to cheat or defraud another, shall designedly, by color of any false token or writing, or by any other false pretense, obtain the signature of any person to any written instrument or obtain from any person any money, &c., shall, upon the conviction thereof, be punished in the same manner and to the same extent as for feloniously stealing the money, &c." The only question is whether Saunders, sentenced as he had been to the penitentiary, though he had appealed to this court, where the judgment was reversed, was at the time he was offered as a witness, a competent one. We think the circuit court properly excluded him. He was convicted of a crime which disqualified him as a witness, and the subsequent reversal of that judgment by this court, could not be anticipated by the circuit court.

The question as to an alteration of a receipt given by Hull, the manager of the press company, who sued as plaintiff in the former trial, to Saunders, from $200 to $500 is a matter which we are not inclined to review. The judge who tried this case was satisfied, and for myself I agree with him. The original receipt is sent here in the record, and I think an alteration was made, but apart from this, the books of the company produced on the trial are strong, if not conclusive evidence, that the receipt was originally for $200 and not for $500.

It appears very clearly that Richardson, one of the defendants in the suit against plaintiff and others, had made an arrangment with the plaintiff, by which he was

to be let off with merely nominal damages.   But we do not see how this injured the plaintiff, or increased his liability.   His evidence on this trial only goes to show that plaintiff was never liable, about which we have no doubt, but upon the question of the plaintiff's proportionate liability it sheds no light.   The main question affecting plaintiff was decided against him on the first trial.   That question was, whether he was responsible for the publication of his name as one of the managers of the paper printed as the organ of the Liberal Republicans.   The evidence in the case seems to be clear that no such responsibility was assumed by him.   Three years have passed, and now this suit is brought by the plaintiff, not to prove the injustice of the original judgment, but to show that he paid more than his share of the liabilities assumed by the directors of the newspaper printed by the Democratic Press Co. Section 9, (1 Wag. Stat. p. 270), declares that " it shall be lawful for every creditor of two or more debtors, joint or several, to compound with any and every one or more of his debtors, for such sums as he may see fit, and to release him, or them, from all further liability to him for such indebtedness, without impairing his right to demand and collect the balance of such indebtedness, from the other debtor or debtors, thereof and not so released, provided that no such release shall impair the right of any debtor of such indebtedness, not so released to have contribution from his co-debtors, as is, by law, now secured to him." We are unable to perceive how the discharge of Richardson could have injured the present plaintiff, and it is obvious from Richardson's testimony on this trial that his absence from the former trial could only have affected the plaintiff's liability, a point not now sought to be reopened, and could have had no influence on the extent of that liability, which is the only matter now complained of.   Judgment affirmed.

AFFIRMED.