WILLIAM A. LINK *et al.*, Respondents, v. MARTIN A. LINK, Appellant.

**St. Louis Court of Appeals, February 23, 1892.**

1.  **Administration**: ACTION TO CANCEL FRAUDULENT ALLOWANCE OF DEMAND IN FAVOR OF ADMINISTRATOR : PLEADING. The defendant in this cause presented in the proper probate court a claim in his favor as a demand against an estate which was being administered upon, and obtained a judgment in that court allowing his claim as such a demand. The plaintiffs, who, together with the defendant, were the distributees of the estate, instituted this action and sought therein to have the allowance canceled as fraudulent. *Held*, that the petition sufficiently averred fraud on the part of the defendant in procuring the allowance, and showed sufficient diligence on the part of the plaintiffs, notwithstanding that this action was commenced two and a half years after the allowance was made.

2.  ———: ———: SUFFICIENCY OF THE EVIDENCE. When a judgment is attacked and sought to be set aside for fraud, a recovery cannot be had unless it appears that there was fraud in the proceedings whereby the judgment was procured ; the fact that the cause of action upon which the judgment was based was fraudulent will not suffice. But *held*, that the requisite fraud was established by the evidence in this cause.

3.  ———: ———: NOTICE OF CLAIM TO DISTRIBUTEES. While the law does not entitle the distributees of an estate to notice of the presentation of claims in the probate court for allowance as demands against the estate, still, when an administrator presents a claim in his own favor for such allowance, circumstances may exist, and they are held to have existed in this cause, making it the duty of the administrator to give notice thereof to those immediately interested in the estate.

4.  **Practice, Appellate** : MOTION TO RETAX COSTS. A question relating to the taxation of the costs in the trial court must be presented to that court, before it can be made the subject of review in an appellate tribunal.

*Appeal from the Franklin Circuit Court.*—HON. RUDOLPH HIRZEL, Judge.

AFFIRMED.

*A. McElhinney*, for appellant.

*Chas. H. Anderson*, for respondents.

THOMPSON, J.—This is a suit in equity to set aside a judgment of the probate court of Franklin county, allowing in favor of the defendant a demand against the estate of Mary I. Link, deceased, in the sum of $685, on the ground that said judgment was concocted by the defendant and others through fraud. The plaintiffs had a decree in the circuit court, and the defendant appealed to this court.

The first objection made by the appellant is that the petition states no cause of action. The objection is not well taken. It is to be observed, in considering it, that no objection was taken to the petition in any way in the court below, whether by motion in arrest of judgment or otherwise ; but that its allegations were traversed, and that the parties went through trial thereon, and that it subserved every office of a pleading in that it has fully notified the defendant of the grounds of action against him. Its essential allegations are that Mary I. Link died intestate on the twenty-eighth day of March, 1886, leaving certain real estate in the counties of St. Louis and Franklin, described by metes and bounds, and leaving as her heirs-at-law the plaintiffs, William A. Link, A. J. Link, Anna B. Link and Addie L. Owen,—the plaintiff, B. L. Owen, who is the husband of Addie L. Owen, being joined for conformity ; that the plaintiffs first named and the defendant are the

only heirs-at-law of the said Mary I. Link; that letters of administration on her estate were granted to the defendant, Martin A. Link, on the sixth day of December, 1886; that he thereupon gave a bond and was duly qualified and took charge of the estate, and is now in charge thereof as administrator. The petition then avers that the defendant, intending and designing to acquire a large amount of money from the estate, to which he was not justly entitled, and in utter disregard of the rights of the plaintiffs as his co-heirs and distributees of said estate, and to wrong and defraud them of their just proportion of the proceeds thereof, fraudulently contrived and schemed to procure a judgment of allowance in said probate court in his favor and against said estate for about the sum of $1,000, made, as plaintiffs are informed and aver the fact to be, upon a false and fraudulent account for labor and services alleged therein to have been rendered for and on behalf of the said Mary I. Link in her lifetime; and that the defendant accordingly, in furtherance of said scheme and contrivance to defraud, fraudulently concealed from plaintiffs all information of his having any intention to make or present for allowance against said estate any demand in his own favor; and that, while so fraudulently concealing all such information from the plaintiffs, he proceeded to and did present said accounts to said probate court at the June term thereof, 1887, for allowance and classification; and, there being no co-administrator of said estate, the said court thereupon appointed James Booth administrator *pendente lite* to appear and manage the defense in said matter; that said administrator *pendente lite* had no experience in such matters, and had no knowledge or information of the said fraudulent contrivance and scheme of the defendant to defraud, nor of the falsity and injustice of said account; that he resided remotely from said estate, and from the heirs, the plaintiffs and defendant, and knew nothing, and made no inquiry of the merits or

demerits of said account, and made no defense to said claim; and that, accordingly, on the twelfth day of July, 1887, said probate court gave judgment of allowance of said account to the extent and for the sum of $685, and classified the same in the fifth class of demands against the estate of Mary I. Link, deceased. The petition further alleges that the defendant has at all times purposely concealed from the plaintiffs, and from each of them, all knowledge or information of his intention to procure said allowance or any allowance, or that he had any intention whatever of procuring such allowance; and that, he so adroitly concealed the fact that he had procured said allowance, that none of the plaintiffs had any knowledge of the existence of the said judgment for a long space of time, to-wit, about two years and six months after the allowance thereof, or until about the first day of February, 1890, when they acquired information of the procurement of said fraudulent allowance, and then not by or from the defendant, but from other sources; and that by reason of such concealment the plaintiffs were deprived of all opportunity and right to have the probate court vacate said allowance. The petition further avers that the defendant never, at any time during the lifetime of said Mary I. Link, rendered any services to or in her behalf that were not fully compensated and paid by her; that the defendant well knew, at the time of procuring said allowance, and at all times, that the plaintiffs were in the possession of the circumstances, facts and information, sufficient and necessary effectually to resist and defeat said allowance, if they had been accorded an opportunity to do so. The plaintiffs further aver that they cannot be more definite or particular in stating the items of said fraudulent account, because the same, together with the certificate of allowance thereon by the judge of said probate court, is in the possession of the defendant; and that, although an inspection and

copy of said account have often been requested of defendant by plaintiffs, yet he hath always refused and doth now refuse to give such copy, or to allow an inspection thereof ; that in the administration of said estate all personal assets have been exhausted, and no fund for the payment of debts exists other than said real estate. The petition concludes with a prayer that the court, by its decree, declare the judgment of the probate court null and void and of no effect, and also for general relief.

The objections to this petition are, *first*, that it does not plead any fact constituting fraud, but pleads only conclusions ; and, *secondly*, that it does not show any diligence on the part of the plaintiffs or their counsel. We are of opinion that the petition, in charging a fraudulent concealment of the existence of an unfounded claim, subsequently exhibited, sufficiently charged a fraudulent concoction of the judgment, and, in charging a prior and subsequent concealment, showed a sufficient excuse of any want of diligence on the part of the plaintiffs in moving earlier to have the claim set aside. It was thus stated by Chancellor KENT in *Duncan v. Lyon*, 3 Johns. Ch. 356: "It is a settled principle, that a party will not be aided after a trial at law, unless he can impeach the justice of the verdict or report, by facts, or on grounds of which he could not have availed himself, or was prevented from doing it by fraud or accident, or the act of the opposite party, unmixed with negligence or fault on his part." This language has been quoted with approval by our supreme court. *Ritter v. Press Co.*, 68 Mo. 458 ; *Carolus v. Koch*, 72 Mo. 647. In our opinion the petition clearly states facts taking the case out of this rule. It shows that the defendant was the general administrator of the estate, and that the plaintiffs were the co-heirs with the defendant of the estate, and hence beneficiaries therein ; and the legal inference is that he stood in a relation of trust and confidence toward them ; it then

states with sufficient definiteness that he not only concealed from his co-heirs and the beneficiaries in the estate all knowledge of the claim itself or of his intention to procure such an allowance, but that he also concealed from them the fact, that he had procured the allowance so adroitly that they did not know of the existence of the judgment until about two years and a half after its rendition. To hold that, under such circumstances, the plaintiffs are precluded by their laches from having equitable relief, would be to attach a new legal value to the fraud of the defendant.

The next objection is that there is no evidence to support the judgment. This objection is equally untenable. We concede the proposition of law contended for by counsel for defendant, that the fraud which will warrant a court of equity in enjoining a judgment at law must not merely be a fraud in the claim which has ripened into a judgment, but that it must be a fraud in the procurement of the judgment itself; in other words, it must be, as is sometimes said, a fraud in the very concoction of the judgment. The rule is very well expressed by Mr. Justice STORY: "Where a judgment is attacked and sought to be set aside for fraud, the fraud must have been practiced in the very act of obtaining the judgment, or else it will be concluded by the judgment at law, where fraud is equally a defense as in equity." The rule is further expressed by BLACK, J., in a recent case (*Murphy v. DeFrance*, 101 Mo. 157) thus: "A judgment procured by fraud may, of course, be set aside in equity, but the fraud, because of which such relief is granted, is one in procuring the judgment. As has been said by this court: Courts of equity will not vacate or enjoin a judgment merely because based on a cause of action which may be vitiated by fraud." If the cause before us does not present a state of facts invoking the exercise of the jurisdiction of equity to set aside a judgment, concocted by fraud, within the rule thus stated, then the jurisdiction does not exist at all.

The claim preferred in the probate court by the appellant was for labor and services for the term of five years from the twenty-eighth of March, 1881, to the twenty-eighth of March, 1886, at the rate of $150 per year. The date last named was the date of the death of his mother, Mary I. Link. She had procured a divorce from her husband, the father of the parties to this controversy, in 1878. In 1879 the defendant, her oldest son, then of age, worked on the farm of his mother with the assistance of his brothers, and supported his mother and sisters. About the year 1880, the other two brothers started out for themselves, and the defendant continued to work his mother's farm. The evidence makes it sufficiently clear that he had no contract with his mother that he should be paid for his labor, but that the understanding throughout the family was that he was to carry on the farm on his own responsibility and in his own name, and to have for his services all that he could make from it after supporting his mother and youngest sister. During the five years embraced in his claim he raised very considerable crops from the farm, which he either converted into money or fed to stock, and subsequently appropriated the stock to his own use. The money which he made from the farm he spent freely on himself, but was very scant in his allowances to his mother and sister. He had next to nothing when he began to work the farm, but he took from it, after the death of his mother, property of the value of nearly $500 which he did not embrace in his inventory as administrator. He never intimated to his brothers and sisters, these plaintiffs, that he intended to prefer any demand against the estate for his services in working the farm; but after he had taken out letters of administration upon the estate, he gave and left them to understand that the only demands against the estate were a doctor's bill and an attorney's fee. At the June term, 1887, he preferred in the probate court of Franklin county, where the administration was

conducted, the demand which is the subject of this contro-
versy, without conveying any intimation towards the
plaintiffs of his purpose so to do. Thereupon the court
appointed a young lawyer as administrator *pendente
lite* in the place of defendant, there being no co-admin-
istrator. This young man was not yet twenty-three
years of age; he had been admitted to the bar but one or
two months, he had had no experience in the duties which
he was appointed to perform; he seems to have been
employed about the probate court as a sort of factotum
and clerk by the probate judge; in this capacity he
wrote up the records of the court, and the record of his
appointment as administrator *pendente lite* was writ-
ten up by him. He made no inquiry whatever into the
nature of the claim; held no communication whatever
with the plaintiffs, or with anyone else beneficially
interested in the estate and interested in resisting the
claim; in short, so far as appears, he held no communi-
cation with anyone in regard to the claim, unless it
were the claimant and his attorney. He limited his
resistance to the claim to the cross-examination of the
single witness who, so far as appears, was produced to
support the claim. This witness was a near neighbor
of the mother of the parties during the five years for
which the claim for services was preferred. He testi-
fied only as to two points: *First.* That during the
five years the claimant had worked upon the farm of
his mother. *Second.* That his services were worth
$150 a year. He gave no testimony as to the contract,
terms or conditions, under which the claimant was ren-
dering his services. It does not appear that any other
evidence was adduced in support of the claim. After
the court had adjourned, this witness was carefully
coached, both by the claimant and his attorney, not to
state the fact that the claim had been preferred, but to
keep it secret,—the claimant giving as his reason that
if it should become known it would create trouble
between him and the other heirs. The witness obeyed

this injunction and concealed from the other heirs the fact that the claim had been preferred, and that he had testified in the case.   He gives, as his reason for so doing, the request which had been made to him, and the fact that the heirs never asked him for information on the subject.   The defendant himself, with equal care, forebore to mention to his co-heirs the fact of his having preferred this claim, and of its having been allowed, although it appears from the evidence that he had frequent opportunities to do so, until they accidentally discovered the fact, but not until a lapse of two and a half years from the date of the judgment, when it was too late to have it vacated in the probate court itself.   The discovery came about in this way :   One Oliver was about to take a lease of the farm, and heard that there was a large demand against it which had ripened into judgment; he made inquiries and found this judgment standing in the probate court against the estate of Mrs. Link, amounting, with the accumulated interest, to something near a thousand dollars as it seemed to him.   He told the co-heirs of this, and thus they learned of it for the first time.   When they confronted their brother, this defendant, and demanded an explanation, he at first answered evasively, then admitted it, but refused to take any steps to have the judgment vacated.   Upon the fact of the concealment by the defendant of his having any claim against the estate of the nature which he preferred, and of his affirmative efforts to conceal from his co-heirs the further fact that he had preferred the claim in the probate court, and that it had been allowed, and of the further fact that the efforts were successful, there is no conflict in the evidence.

The only substantial conflict in the evidence relates to the amount which the defendant realized from working the farm of his mother during the five years for which he preferred his claim, and what was done with the money which he thus realized.   His own evidence

tends to show that he used it largely in promoting certain litigations of his mother in regard to a portion or portions of her estate. This evidence is contradicted by the evidence adduced by the plaintiffs, and in some respects it is contradicted by the records of the probate court. In deciding upon the value of this evidence we follow the well-known rule of deferring to the circuit judge who heard the witnesses; and we observe further that if the circuit judge declined to attach any probative value to the evidence of the defendant, except in so far as it may have been corroborated or was intrinsically probable, the defendant has himself only to blame; for the testimony of one, who has acted in the manner in which he is shown to have acted, is not worthy of credit in a court of justice.

But it is argued that the defendant was not guilty of any fraud toward his co-heirs in concealing from them the fact of his intention to prefer this claim against the estate, in failing to give them notice of his making the claim, and in concealing from them the fact that the claim had been allowed, because the law does not entitle the heirs to notice of claims preferred against the estate for allowance. This is true; but, nevertheless, we are of the opinion that circumstances may exist, where the principles of honesty and fair dealing raise the legal duty on the part of the administrator of giving notice to those immediately interested in the estate. Such, we think, was the case. The defendant was not estopped from exhibiting his claim against the estate although he gave the plaintiffs to understand that no such claim existed; but if, after such statement, he concluded to prefer a claim, it was his legal duty to advise them of such intention, so as to give them opportunity to resist it, if so advised. His failure to do so was, under the circumstances, a fraudulent concealment, and as such evidence of a fraudulent concoction of the judgment. He had opportunities every day of communicating with them and informing them of his intention to prefer it.

Circumstances had arisen, which had created ill feeling between him and them, and these circumstances increased the obligation on his part of giving them notice of the claim. He not only concealed the fact of his intention to prefer this claim, but he gave them to understand the contrary. In the language of one of them, testifying as a witness: "He said there was no other debt, except Mr. McElhinney's fee and Dr. Loving, and one or two other little accounts that did not amount to much, and left the impression that the estate was about out of debt," and another of them testifies to the same effect. He also procured the appointment of a person manifestly inexperienced to represent his co-heirs and resist the claim. He further knew that this inexperienced person had not acquainted himself with the nature of the claim, and had taken no proper steps to investigate it or to resist it. If, in addition to this, we consider the affirmative and active steps taken by him to conceal the fact of the allowance of the claim, we have the case of the fraudulent concoction of a judgment, so flagrant, so dishonest, that to allow it to stand would be a reproach to the name of equity.

A motion has been made by the respondent to tax the sum of $40 against the appellant for an amended bill of exceptions, which the respondent was obliged to go to the expense of drawing up and presenting to the judge, in consequence of the fact, that the appellant presented and procured the signature of the judge in the first instance to a bill of exceptions which did not set out the evidence according to the stenographer's report, but which set it out only in a condensed and summary manner. We do not regard this as a matter coming within our appellate jurisdiction. It is a question relating to the taxation of costs in the circuit court, with which that court must deal in the first instance, before it can be made the subject of a review in an appellate tribunal. We are not called upon to express our opinion as to whether or not the respondents are

entitled to have this item of costs taxed in their favor, as no such question is raised by the record, and we do not regard it as seemly to express an opinion on a question which is not properly brought before us for decision.

The judgment of the circuit court will be affirmed. It is so ordered. All the judges concur.