[Viberg v. The State.]

# Viberg *v.* The State.

## *Indictment for Larceny.*

1. *Sufficiency of indictment; averment of defendant's name.*—In an indictment, it is permissible to aver the surname of the defendant under an *alias,* and when the surname is so averred such indictment is not subject to demurrer therefor.

2. *Indictment for larceny; averment of ownership.*—In an indictment charging the larceny of money from a person, the ownership of the money alleged to have been stolen is properly laid in the person from whom it is stolen, although it did not belong to him, but he was simply a bailee.

3. *Indictment for larceny; admissibility of evidence.*—On a trial under an indictment charging the defendant with the larceny of money from a person, what is said between the defendant and the person from whom the money was alleged to have been stolen from the time of their meeting up to the time of the commission of the larceny, is admissible in evidence as part of *res gestae.*

4. *Same; same.*—On a trial under an indictment charging larceny of money from a person, where it is shown that the defendant and the person from whom the money was alleged to have been stolen were strangers, and that immediately after taking the money the defendant fled, it is competent for the State to show by the person from whom the money was alleged to have been stolen, that when he next saw the defendant he was under a circus tent under arrest; such evidence being admissible as tending to identify the defendant and as bearing on the question of flight.

5. *Same; same.*—In such a case it is competent for the State on cross-examination of defendant to ask him whether or not he was connected with the circus that was to exhibit in the town where the larceny was committed on the day of its commission.

6. *Same; same.*—In such a case it is not prejudicial to the defendant for the State to ask him whether or not he had ever been at the place where the larceny was committed, before the day it was alleged to have been committed.

7. *Indictment for larceny; admissibility of former conviction.*—On

[Viberg v. The State.]

a trial under an indictment for larceny, the record of de-
fendant's former conviction for larceny is admissible in
evidence, although such record showed that an appeal from
the former conviction had been taken and was then pending.

8. *Larceny; charge of court to jury.*—On a trial under an indict-
ment for larceny, where there was evidence tending to show
that the defendant committed the offense charged, the gen-
eral affirmative charge requested by the defendant is properly
refused.

9. *Same; same.*—On a trial under an indictment for larceny,
where there is no evidence tending to show that defendant
was loaned the money which he was alleged to have stolen,
a charge requested. by the defendant is properly refused
which instructs the jury, "If you believe from the evidence
the witness Thomas loaned the defendant the property al-
leged to have been stolen, you cannot convict the defendant."

APPEAL from City Court of Montgomery.

Tried before the Hon. WILLIAM H. THOMAS.

The appellant in this case was indicted, tried and con-.
victed of grand larceny. The indictment was in words
and figures as follows: "The grand jury of said county
charge, that before the finding of this indictment, George
Viberg, *alias* Verberg, feloniously took and carried
away five twenty dollar gold pieces of the gold coin of
the United States of America, of the aggregate value of
one hundred dollars, the personal property of Lawrence
Thomas, against the peace and dignity of the State of
Alabama."

To this indictment the defendant demurred upon the
following grounds: "(1.) Because said indictment fails
to allege the name of the defendant under the second.
*alias* alleged in the indictment.    (2.)  Because said in-
dictment fails to allege that the christian name of de-
fendant is unknown to the grand jury."

On the trial of the case the state introduced as a wit-
ness one Lawrence Thomas, who testified that on Octo-
ber 8th, 1902, he came to Montgomery with some cattle
for sale; that about 9 o'clock in the morning he went
into the Farley National bank, and when he came out of
the bank the defendant came up to him and asked him
where he lived; that he told him he lived in Coosa
county, whereupon defendant asked him if he had
brought anything to town to sell; that upon witness tell-

[Viberg v. The State.]

ing him that he had sold some cattle, the defendant stated that he was interested in the business and could introduce the witness to a party who was also interested and that it would be to witness' interest to meet such party; that witness stated that he would go with him to see his friend if there was any money in it; the witness and defendant then walked eight or nine blocks; that after they had gotten back of the capitol, defendant stated that his friend was in a buggy and must have driven off, and upon his instructions he and the witness sat down to await his friend's return; that thereupon a negro came up and upon the defendant's asking him where he lived, he stated that he lived 27 miles in the country; that defendant told the negro he wanted him to scatter some circulars for him, and he would give him a dollar for doing so; that the negro asked him to pay him fifty cents at that time, and defendant pulled a dollar out of his pocket, but the negro professed not to be able to change it, and defendant then asked the witness to change the dollar for him; that while witness was looking in his pocket book to get the change he took out of it one hundred dollars in gold in five twenty-dollar gold pieces; that the defendant asked the witness to allow him to hold it while he got the change, and witness handed the money to the defendant; that defendant then made a motion as if to hand the hundred dollars in gold to the negro; that the negro seemed to take it and then defendant ran away in one direction and the negro ran in the opposite direction, and that witness ran after the negro, to whom he supposed the defendant had given the money. The witness further testified that the money did not belong to him, but belonged to his father, and was the proceeds of the sale of a load of cattle belonging to his father, which witness had brought to Montgomery to sell for his father.

The defendant objected to the portion of the witness' testimony reciting the conversation had between him and the defendant from the time they met at the Farley National bank to the time the money was taken, upon the ground that such evidence was incompetent, irrelevant and immaterial. The court overruled the objection, and to this ruling the defendant duly excepted.

[Viberg v. The State.]

On the further examination of the witness he was asked when was the next time he saw the defendant. The defendant objected to his question upon the ground that it called for incompetent, irrelevant and immaterial evidence. The court overruled the objection and the defendant duly excepted. The witness answered that the next time he saw him was under a circus tent that same day. The defendant moved to exclude the answer upon the same grounds of objections to the question, and duly excepted to the court's overruling his motion. The witness was then asked if the defendant was under arrest when he saw him in the circus tent. The defendant objected to this question upon the ground that it called for irrelevant and incompetent evidence, and tended to prejudice the defendant, in the minds of the jury. The court overruled the objection and the defendant duly excepted. The witness answered that he was.

The other facts pertaining to the rulings of the court upon the evidence are sufficiently stated in the opinion.

Upon the introduction of all the evidence, the defendant requested the court to give to the jury the following written charges, and separtely excepted to the court's refusal to give each of said charges as asked: "(1.) The court charges the jury that if you believe the evidence in this case you will find the defendant not guilty." "(2.) If you believe from the evidence that the witness, Thomas, loaned the defendant the property alleged to have been stolen, you cannot convict the defendant."

TERRY RICHARDSON, for appellant.—The indictment in this case was subject to demurrer for averring the surname of the defendant under an *alias.*—*Lee's case,* 55 Ala. 259; *Even's case,* 67 Ala. 6.

It was error for the court to allow the introduction of the evidence of the record of the defendant's former conviction for petit larceny.—*Wickard v. State,* 109 Ala. 47; *Hobbie v. State,* 75 Ala. 5.

The witness, Thomas, from whom the property is alleged to have been stolen, testified that the property alleged to have been stolen was not his, and that he had no interest in it, except that he sold the cattle, of which this money was the proceeds, as agent for his father.—*Fowler v. State,* 100 Ala. 96; *Smith v. State,* 79 Ala. 20.

MASSEY WILSON, Attorney General, for the State.—
The demurrer to the indictment was properly overruled.
*Haley v. State,* 63 Ala. 89; 10 Ency. Pl. & Pr. 506, note 1.

The objection of the defendant to the evidence of the
witness, Thomas, was properly overruled. It was ad-
missible, being part of the transaction which culminated
in the commission of the offense.—*Churchwell v. State,*
117 Ala. 124.

The objection of the defendant to the evidence of the
same witness was properly overruled. The evidence was
admissible for the purpose of identifying the defendant,
and also had some bearing on the question of flight of
which there was other evidence.—*Bell v. State,* 115 Ala.
25, 38; *Koch v. State,* 115 Ala. 99.

The record of defendant's former conviction for petit
larceny was admissible in evidence.—1 Greenl. on Ev.
(15th ed.), and note to § 377; *Kelsoe v. State,* 47 Ala.
573; *Ritter v. Press Co.,* 68 Mo. 458.

TYSON, J.—In *Haley v. The State,* 63 Ala. 89, it was
held that the averment of the name of the defendant
under an *alias dictus* was proper. In that case, the
Christian name of the defendant was averred under an
*alias,* while in this case the *surname* of the defendant is
so averred. If proper in the one, it is necessarily proper
in the other. It was unnecessary to repeat the Chris-
tian name, before the surname Verberg. To have done
so, would not have made the averment plainer. It would
simply have been a mere repetition. The demurrer to
the indictment was properly overruled.

What was said between defendant and Thomas, from
whom it is alleged the money was stolen, from the time
of their meeting at the bank until they reached the place
where the larceny was committed, being part of the
transaction which culminated in the commission of the
offense, was clearly admissible as part of the *res gestae.*
*Churchwell v. The State,* 117 Ala. 124.

The evidence in behalf of the State tended to prove
that after the defendant acquired the possession of the
money and gave it to the negro, whom the jury was au-
thorized to find was his accomplice, he ran rapidly away

in one direction, while the negro ran in an opposite one. It was shown that defendant and Thomas were strangers. It was, therefore, entirely competent for the solicitor to show by Thomas that when he next saw defendant, after the larceny, he was under the circus tent and under arrest. This evidence was competent for the purpose of identifying defendant and also had some bearing on the question of flight.—*Bell v. The State,* 115 Ala. 25, 38-9; *Koch v. The State, Ib.* 99.

On cross-examination of defendant as a witness, he was asked, "Were you not connected with the circus that was here that day?" No objection was interposed to this question until after defendant had answered, "yes." But had it been timely interposed, we apprehend there would have been no merit in the objection. For it is always competent to show by a witness his occupation and residence.

Nor can the objection to the question propounded to defendant, as a witness, on cross-examination: "Have you ever been in Montgomery before?" be of any avail. If error was committed in allowing the question to be asked, which we do not concede, we cannot conceive how it could possibly prejudice the defendant. For the same reason, the question asked defendant if he resided in Alabama must be held to have been innocuous.

The prosecution was allowed to introduce in evidence, against the objection of defendant, the record of his former conviction of petit larceny. The record showed that he had taken an appeal, in that case, to this court, and we may assume, if that were important, though not affirmatively shown by the record before us, that the execution of that judgment had been suspended as required by section 4319 of the Code. Section 1795 of the Code provides that: "No objection must be allowed to the competency of a witness because of his conviction for any crime, except perjury or subornation of perjury; but if he has been convicted of other infamous crime, the objection goes to his credibility." · It cannot be doubted that a judgment of conviction is necessary, before the provisions of the statute can be availed of.—Clark's Man. Crim, Law, § 2437; *Powell v. The State,* 72 Ala. 194. Nor can it be seriously doubted that petit larceny

is an infamous crime and that a conviction for that offense goes to the credibility of the person convicted as witness.—*Sylvester v. The State,* 71 Ala. 17; *Smith v. The State,* 129 Ala. 89. This seems to be conceded, but it is insisted that the appeal to this court and the suspension of the judgment operated to annul the judgment of conviction. Clearly if this is true, then the judgment of conviction was improperly admitted in evidence. On the other hand, if it is not true, but the execution thereof was simply suspended pending the appeal, the ruling of the trial court was proper. At common law the judgment of conviction would have disqualified the witness. *Sylvester's case, supra.* This disqualification or disability can be removed in two ways; first, by a reversal of the judgment, and second, by a pardon. Until one of these modes had been sucessfully resorted to, the convicted person continued to be infamous and the disability created by the judgment of conviction was still upon him.—1 Greenleaf on Ev., § 377, and note. The point under consideration was directly presented and decided by the Supreme Court of Missouri in the case of *Ritter v. The Democratic Press Company,* 68 Mo. 458. In that case the witness had been convicted of obtaining money under false pretenses, but had appealed his case to the Supreme Court and obtained a *supersedeas.* Pending the appeal and a suspension of the judgment, he was offered as a witness, but was excluded. The court, after quoting the statute disqualifying the witness, said: "The only question is whether Saunders, sentenced as he has been to the penitentiary, though he had appealed to this court, where the judgment was reversed, was at the time he was offered as a witness, a competent one. We think the circuit court properly excluded him. He was convicted of a crime which disqualified him as a witness, and the subsequent reversal of that judgment by this court, could not be anticipated by the circuit court." Although the court does not in express terms hold that the judgment of conviction was not annulled by Saunder's appeal, yet, it is clear that this is the principle underlying the decision. Under our statutory system, a mere appeal does not, in any case, operate to suspend a final judgment or decree. In civil cases, in order to

prevent the enforcement of the judgment or decree, where an appeal is taken therefrom, a *supersedeas* is necessary. And doubtless, if it were not for the provisions in the statutes making it mandatory on the court in criminal cases, when defendant's desire to appeal is made known, to suspend the execution of the judgment of conviction pending the appeal, the judgment would be enforced notwithstanding an appeal was taken.—Code, §§ 4318, 4319; *White v. The State*, 134 Ala. 197. These statutes go no further than indicated above. They simply provide that, upon its being made known to the court that the defendant desires to take an appeal, "judgment must be rendered on the conviction, but the execution thereof must be suspended pending the appeal." They do not in anywise interfere with the finality of the judgment or its validity. Nor do they make its finality dependent upon an affirmance or a reversal by this court. Their effect is to prevent the enforcement or execution of the judgment while the appeal is pending, and this clearly marks the limit of their operation. Our conclusion is, that the judgment of conviction remained in full force and effect in so far as it was an adjudication of the guilt of the defendant for the purpose for which it was offered in evidence.

The evidence showed that the money stolen was proceeds of cattle, which Thomas, in whom the ownership of the money is alleged, had been entrusted to sell for his father. This constituted him a bailee of the money and the ownership of it was properly laid in him.— *Fowler v. The State*, 100 Ala. 96.

The two written charges requested by defendant were properly refused.

There is no error in the record, and the judgment must be affirmed.