# Williams *v.* The State.

## *Larceny.*

(Decided June 19, 1912.  59 South. 528.)

1. *Larceny; Indictment; Ownership.*—Larceny is an offense against the possession, and an indictment laying the ownership of the property alleged to have been stolen, in the person in possession, was proper.

2. *Same; Evidence.*—A statement of a defendant charged with larceny relating to the property alleged to have been stolen and in his possession, to the effect that his landlord claimed it, and that he turned it over to him, was competent as tending to show the guilty character of defendant's possession.

3. *Same; Identity.*—Where the prosecution was for the larceny of seed cotton, evidence merely tending to show that the cotton found in the defendant's possession was of the same general appearance and texture as the cotton remaining in the house, from which it was alleged to have been stolen, was not admissible.

4. *Same; Opinion.*—The testimony of the witness showing him to be an expert, and also showing such personal knowledge of the stolen property as to render his judgment valuable to the jury, may state that in his judgment the cotton in the possession of defendant was the cotton stolen.

5. *Same.*—Where the question as to whether the cotton seen by the witness was a part of the cotton which defendant admitted that he turned over to his landlord was material, the testimony of the land-

[Williams v. The State.]

lord that he gave a small amount of the cotton delivered to him by the defendant, as a sample to the person in whose possession the first witness saw it, was admissible.

6. *Same; Jury Question.*—The evidence in this case examined and held to be sufficient to require its submission to the jury for a determination of the defendant's guilt or innocence.

7. *Criminal Law; Venue; Proof.*—Where there is evidence tending to show that the crime was committed in the county where the indictment was found and trial had, the question of proof of venue becomes one for the jury.

8. *Same; Evidence.*—Where a witness testified at the time of the trial held in Dale County, that she was then living in C. county, but that at the time of the alleged offense, which, if committed, was committed about three years prior thereto, she lived "up here," the jury might infer that by the words "up here" the witness meant that she lived in Dale County at that time.

APPEAL from Dale Circuit Court.

Heard before Hon. MIKE SOLLIE.

Alex Williams was convicted of larceny, and he appeals. Affirmed.

J. E. Z. RILEY, for appellant. The motion to dismiss the appeal should be overruled, as it came too late.— Rule 41, Sup. Ct. Pr; *Peters v. Nolan,* 57 South. 398; *Street v. Street,* 113 Ala. 333. Counsel discuss the errors assigned, but without citation of authority.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State. The appeal should be dismissed because not filed at the term to which it was made returnable.—Rule 41, Sup. Ct. Pr.

DE GRAFFENRIED, J.—The defendant was indicted for the larceny of 400 pounds of seed cotton, the property of James Teal, of the value of less than $25. He was tried and convicted by a jury.

1. Larceny is an offense against the possession. As Teal was in the possession of the cotton when it was stolen, if in fact, it was stolen—the indictment properly laid the ownership of the cotton in him.

8 CA

2.    While the question as to whether Teal actually lost any seed cotton (i. e., whether any cotton was in fact stolen from Teal) was a disputed question, the fact that the defendant was in possession of seed cotton under such circumstances as indicated that he had stolen it from some one was undisputed.  He was admittedly in possession of seed cotton at night, and was seen traveling with it, at night, in his wagon.  He admitted that he, after he ascertained that he was known to be in possession of the cotton, carried it to a man named McLeod; that he told McLeod that the cotton belonged to him (McLeod) ; that he knew that when he made this statement to McLeod he was telling an untruth; and that McLeod refused to receive or have anything to do with the cotton.  He further admitted that he was living, at the time of the alleged larceny, on the plantation of a man named Hughes; and that he made a crop of cotton on Hughes' place that year.  His defense was that the cotton which was seen in his possession was not stolen from Teal, but was the cotton of Hughes; that he had raised the cotton that year on Hughes' place; that he was, when seen in possession of the cotton, on the way to Ozark with it, for the purpose of selling it for his own benefit, without the knowledge or consent of Hughes; and that, being seen by a son of Hughes in possession of the cotton, and realizing that he had gotten himself into trouble about it, he took it to Hughes and delivered it to him.

While the state was developing its case, a witness, Phillips, testified to certain damaging statements which the defendant had made to him about the cotton.  This witness, against the objection of the defendant, was permitted to testify that in the conversation in which the said statements were made the defendant told him that "Hughes took him off there at Skippersville and

told him the cotton was his (Hughes'), and to turn it over to him, and he would not hurt him," and that thereupon he turned the cotton over to Hughes. We think the above testimony was relevant and material. It was a voluntary statement, made by the defendant to the witness, relative to the cotton, the subject of the alleged larceny, and tended to show that the possession of it by the defendant was not innocent, and that he delivered it to Hughes for the purpose of fabricating a defense to the present indictment.

3. While evidence merely tending to show that the cotton found in the possession of the defendant was of the same general appearance and texture as the cotton remaining in the cotton house from which the cotton is alleged to have been stolen was, under the decisions of the Supreme Court, of no value, the defendant, without objection, permitted the state to introduce evidence tending to show this fact.—*Buchanan v. State,* 109 Ala. 7, 19 South. 410; *Crane v. State,* 111 Ala. 45, 20 South. 590.

A witness, Phillips, however, testified that, in *his judgment,* the cotton in the possession of the defendant, i. e., the cotton in the box in Payne's store, was the stolen cotton. This witness by his testimony showed, if he testified truthfully, sufficient knowledge as an expert in such matters, and sufficient personal knowledge of the stolen cotton, to render his judgment on the subject valuable to the jury in passing on the question as to whether that cotton was in fact stolen from Teal's cotton house. In fact, the defendant made no objection to the introduction of this evidence.—*Walker v. State,* 58 Ala. 393.

As, therefore, the question as to whether the cotton which the witness Phillips saw in the box in Payne's store was a part of the cotton which the defendant ad-

mitted that he turned over to Hughes presented a matter of material inquiry, the court properly allowed the witness Hughes to testify, against the objection of the defendant, that he gave a small amount of the cotton which the defendant delivered to him—a "sample," as the witness expressed it—to Payne. There were some circumstances shown by the evidence from which the jury had a right to infer that the cotton in the box in Payne's store, which was examined by the witness Phillips, was the "sample" which Hughes had given to Payne.

4. There was sufficient evidence in this case tending to show the defendant's guilt to justify the trial court in submitting that question to the jury.

The ruling of the trial court was not specifically invoked on the question of the sufficiency of the evidence tending to show venue; nor does the record anywhere disclose that its attention was ever directed to that subject. There was *some* evidence from which the jury had the right to infer that the crime was committed in Dale county; and that inquiry was therefore a question for the jury.—*Joe Pearson v. State, Infra,* 59 South. 526; *Will Powell v. State, Infra,* 59 South. 529. *Harrison v. City of Anniston,* 156 Ala. 620, 46 South. 980.

The defendant, testifying as a witness in his own behalf, said that when he was seen with the cotton he was on his way to Ozark with it. Several of the witnesses gave their opinion as to the nearest way from Skippersville—a place near the scene of the crime—to Ozark. The crime, if committed, was committed in the fall of the year 1908; and a sister of the defendant, Ida Martin, testified that at that time she lived within a quarter of a mile of the defendant. The trial was had in the spring of 1911, and the witness Ida Martin further testified, in substance, that at the time of the

[Sansberry v. The State.]

trial she was living in *Coffee* county, but that, at the time of the alleged offense, she lived "up here." The trial was had at Ozark, and this witness, when she used the above expression, was in the courthouse at Ozark, the county seat of Dale county; and the jury had the right to infer from the words "up here," following rapidly, as they did, the other words "Coffee county," that the witness meant by "up here" the county in which the trial was being had, i. e., Dale county. The general rule is familiar that when there is evidence tending to establish the existence of a fact the jury, and not the court, must determine the question as to whether such fact is shown by the testimony.

We have carefully considered every question presented by this record, and have above discussed all of them which appear to possess merit. We are of opinion that the trial court in the trial of this case committed no error. The judgment of the court below should therefore be affirmed.

Affirmed.