TYSON, Presiding Judge.
The appellant was charged in a two-count indictment by the grand jury of burglary and grand larceny of one Zenith stereo, one Zenith television, and some radios, of over $200.00 in value, the personal property of C. M. Mitchell and Melvin R. Kerby. The jury found the appellant “guilty of grand larceny, as charged,” and the trial court entered judgment which fixed punishment at ten years imprisonment.
Grady Mitchell testified that on July 15, 1975, he was employed at Mitchell’s T. V. Sales and Service in Opelika, Alabama. He stated that he walked into the stockroom about 2:30 that afternoon and saw a man with two boxes containing radios walking out of the back door. He positively identified the appellant as being the man who had the two boxes in his hands. From the record:
“Q. Now, what was he doing?
“A. He had two boxes, which had radios in them, in his hands, and he was going toward a door, the back door. And the boxes hadn’t been opened yet. And I yelled at him and asked him what he was doing when I walked through the door. And he said that he needed some empty boxes to move or — he was moving, or to put clothes in, or something. And I told him that they weren’t empty. And so he put them back and walked out. And he asked me where some empty boxes might be, and I told him that they would be behind the building near the trash can. And so he walked around the corner of the building, or just walked away from the door. And there was a maroon Chevrolet sitting in our alley, back. And—
“Q. Was there anybody in the Chevrolet?
“A. It was two black men in the Chevrolet. And the trunk was cracked a few inches, and I looked in the trunk, and I noticed two boxes that were colored and had Zenith insignia on them like I was accustomed to seeing.
“Q. What did you do then?
“A. I opened the trunk and I told the driver, I said, ‘These boxes aren’t empty *575 either.’ And I took them out and put them back in our stockroom.
“Q. And what did the driver of the car do then?
“A. He mumbled, but I didn’t hear what he said.
“Q. Did he just stay there?
“A. He just sat in the car.
“Q. All right. How long did he — Then what happened?
“A. I sent my brother back to get a piece of paper to write down the tag number.
“Q. All right. What happened to the ear?
“A. They drove off in just a few minutes.”
Mr. Mitchell further stated that his brother came running and wrote down the tag number of the automobile as the men were driving away, that Mr. Kerby threw the burglar alarm system, and that he, his father and brother got into a company truck and began following the automobile. He stated that they lost the automobile in traffic, but that later they observed the appellant walking at the corner of Eighth Street and First Avenue, South, in Opelika. He stated that after recognizing the appellant as the man who was carrying the boxes containing radios out the back door of the store, he got out of the truck and flagged a policeman on a motorcycle who arrested the appellant.
On cross-examination Mr. Mitchell stated that there were two boxes in the trunk of the automobile, that these boxes contained a Zenith television and a Zenith stereo set. He stated that the radios were each valued at over $45.00 and the television and the stereo set valued at over $100.00 each.
Jeff Mitchell testified that on July 15, 1975, he was working at Mitchell’s T. V. Sales and Service, that he walked back to the stockroom, and as he did so he saw the appellant going out the back door. He stated that his brother, Grady, called to the appellant and asked him where he was going with the boxes, and the appellant stuttered and said he was “looking for some empty boxes. He stated that he and Grady went outside and noticed in the trunk of the car two boxes, one which contained a Zenith television and the other a Zenith stereo set. He stated that his brother told the appellant, “Those boxes are not empty,” and the appellant and his companion drove off hurriedly. He stated that he wrote down the tag number of the car. He stated that he, his father and brother then got into a truck and attempted to follow the appellant in his automobile. He stated later on Eighth Street in Opelika, near the office of Alabama Office Supply, he observed the appellant walking down the street, and that he identified him to a motorcycle police officer who arrested him.
Claud M. Mitchell testified that he was a partner of Mitchell’s T. V. Sales and Service on July 15, 1975. He testified that on this date two Zenith radios of over the value of $45.00 each, one Zenith television, and one stereo set, each worth over $100.00 were taken from his store. He stated that he was working in the front of the building and was told to get off the phone so that the police could be notified and that he did so. He stated that he went to the back of the store and got in a truck with his two sons, that they attempted to follow an automobile, that they lost it in the traffic, but later his sons identified the appellant walking down Eighth Street in Opelika. He stated that they stopped a motorcycle officer and had the appellant arrested.
Grady Mitchell was then recalled and testified that he identified the two radios in the two boxes to his father as being the ones which the appellant carried out of the store.
Henry Meadows testified that he was working in the Traffic Division of the Ope-lika Police Department on July 15, 1975. He stated that he saw the appellant, Charles Allen Dorsey, walking down Eighth Street near the Alabama Office Supply Company. He stated that Grady Mitchell positively identified the appellant as being the man who had taken some property from his company, and that he placed the appellant under arrest.
*576 Claud M. Mitchell was recalled to the stand and testified that his company was now known as Mitchell’s Inc., but at the time of the incident on July 15, 1975, the business was being operated as a partnership of which he owned one-half and Mr. Melvin R. Kerby owned the other one-half. He stated that most of their merchandise was shipped to them on consignment, but that his company paid for these items within ninety days of receipt. He testified that the partnership owned the radios, stereo set, and the television in the name of “Mitchell’s T. V. Sales and Service” on July 15, 1975.
Robert F. Lumpkin testified that he assisted in the investigation of a larceny and burglary on July 15,1975 at Mitchell’s T. V. Sales and Service. He stated that after giving the appellant a Miranda warning about 2:52 in the afternoon at police headquarters, the appellant then signed a waiver of his rights. He further stated that without any threat, intimidation, coercion, or inducement, the appellant stated to him that he had two years of college, that he knew how to read and write, and that he fully understood his constitutional rights. He stated that the appellant told him that he was riding with Henry Lee Mitchell and Eric Rogers en route to Fort Benning from Birmingham and they were riding in Rogers’ car. He stated that the appellant told him they had driven the car into the alley behind Mitchell’s T. V. Sales and Service Company, and had bought some gas. He stated that the appellant identified Eric Melvin Rogers and Henry Lee Mitchell as being the two men in the automobile in which the television and stero set had been placed.
The appellant made a motion to exclude on the basis that the State failed to prove a prima facie case as to each count of the indictment, and the trial court granted his motion as to the burglary count, but denied the motion as to the larceny count.
The record discloses that the appellant, outside the presence of the jury, was asked by the court if he had been advised of his constitutional right of self-incrimination, and the appellant stated after talking with his attorney that he did not want to take the stand. The appellant presented no evidence at trial.
I
Appellant contends that his motion to exclude as to the larceny count should have been granted because the indictment alleged the stolen merchandise was personal property of C. M. Mitchell and Melvin R. Kerby when the proof showed the stolen merchandise was owned by the partnership doing business as Mitchell’s T. V. Sales and Service.
During the redirect examination of Mr. C. M. Mitchell, the following occurred:
“Q. And at that time you and Mr. Kerby had title to merchandise?
“THE COURT: That was a partnership at that time, Mr. Mitchell?
■“THE WITNESS: Yes, sir.
“THE COURT: Between you and Mr.' Kerby?
“THE WITNESS: Yes, sir.
“THE COURT: Melvin R. Kerby?
“THE WITNESS: Yes, sir.
“MR. INGRUM: We don’t have any further questions of Mr.—
“THE COURT: Still a partnership?
“THE WITNESS: Yes, sir.”
In Viberg v. State, 138 Ala. 100, 35 So. 53, Mr. Justice Tyson stated:
“The evidence showed that the money stolen was proceeds of cattle which Thomas, in whom the ownership of the money is alleged, had been intrusted to sell for his father. This constituted him a bailee of the money, and the ownership of it was properly laid in him. Fowler v. State, 100 Ala. 96, 14 So. 860.”
Similarly in Gandy v. State, 35 Ala.App. 299, 46 So.2d 247, Judge Carr, speaking for the Court, observed:
“Appellant made a motion to exclude the evidence on the ground that the ownership of the property is laid as indicated above and according to the proof the partnership was not the owner but was only in possession of the flight jacket. *577 There is no merit in this position. In a larceny prosecution the ownership of the alleged stolen property is properly laid in the person who is in the rightful possession thereof at the time of the theft. . ” [Cases cited therein]
Clearly, there was no variance between the allegations and the proof in the case at bar.
II
The appellant excepted to the oral charge of the court on the basis that the trial court in its charge indicated that larceny was an offense against possession.
Clearly, this is a correct statement of the law. Williams v. State, 5 Ala.App. 112, 59 So. 528; Gandy v. State, supra.
We have carefully examined this record and find no error therein. The judgment of the trial court is therefore due to be and the same is hereby
AFFIRMED.
All the Judges concur.